WARD v SIANO

Docket No. 265599. Submitted July 31, 2006, at Lansing. Decided November 24, 2006, at 9:10 a.m. Leave to appeal sought.

Matt Ward, as personal representative of the estate of Howard Ward, deceased, brought a wrongful-death medical-malpractice action in the Ingham Circuit Court against John C. Siano, Jr.; Lansing Internal Medicine Associates, P.C.; and Edward W. Sparrow Hospital Association. The defendants filed motions for summary disposition, asserting that, under *Waltz v Wyse*, 469 Mich 642 (2004), the plaintiff's complaint was untimely because he filed it after both the period of limitations and the wrongful death saving period had expired. The trial court, Joyce Draganchuk, J., determined that *Waltz*, which was decided six months after the plaintiff filed his complaint, applied, and granted the defendants summary disposition. The plaintiff appealed. The Court of Appeals reversed because it was required to follow the holding in *Mazumder v Univ of Michigan Bd of Regents*, 270 Mich App 42 (2006), that equitable tolling is appropriate in cases affected by the retroactive application of *Waltz*. Had it not been obligated to follow *Mazumder*, however, the panel would have held that applying the relevant period of limitations does not occasion fundamental unfairness or otherwise warrant the application of the judicial tolling doctrine. The Court of Appeals convened a special panel to resolve the conflict between this case and *Mazumder*, and vacated those portions of its prior opinion that conflicted with *Mazumder*. 270 Mich App 801 (2006).

After consideration by the special panel, the Court of Appeals *held*:

The plaintiff failed to demonstrate any inequity independent of his unknowing failure to comply with the retroactive time limits delineated in *Waltz*. Application of equitable tolling to every plaintiff in this situation would subvert the holding that *Waltz* applies retroactively. Accordingly, equitable tolling should not operate to relieve wrongful death plaintiffs from complying with the time constraints set forth in *Waltz*.

Affirmed.

FORT HOOD, J., concurred in the result only.

O'CONNELL, J., concurred, writing separately to request that the Supreme Court grant leave and issue a full and final opinion regarding the propriety of retroactive application of *Waltz* in light of the fact that *Waltz*'s holding—that the medical malpractice tolling provision did not toll the saving provision in MCL 600.5852—was an issue of first impression on a settled area of law that reversed years of standard practice with little substantive analysis and no advance indication. Further, the Court of Appeals decision to treat remand orders from the Supreme Court as binding leaves lower courts and litigants with the task of deciphering remand orders for substantive guidance as to which legal rules will continue to be applicable.

WILDER, J., concurred in the result reached by the majority, and also joined parts I and II(A) of Judge O'CONNELL's concurrence on the ground that a plenary discussion by the Supreme Court concerning the propriety of prospectively applying *Waltz* would be of great benefit to the bench and bar.

NEGLIGENCE — WRONGFUL DEATH — MEDICAL MALPRACTICE — STATUTE OF LIMITATIONS — SAVING PROVISION — EQUITABLE TOLLING.

Equitable tolling does not operate to relieve wrongful-death medical-malpractice plaintiffs from complying with the retroactively applied time constraints set forth in *Waltz v Wyse*, 469 Mich 642 (2004) (MCL 600.5852, 600.5856[d]).

*Mark Granzotto, P.C.* (by *Mark Granzotto* and *Elizabeth Gleicher*), for Matt Ward.

*Johnson & Wyngaarden, P.C.* (by *Michael L. Van Erp*), for Dr. John Siano, Jr., M.D.; and Lansing Internal Medicine Associates, P.C.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Edward W. Sparrow Hospital Association.

Amici Curiae:

*Smith Haughey Rice & Roegge* (by *Richard C. Kraus*) for University of Michigan Board of Regents; Mohamed Aziz, M.D.; and Stephan F. Taylor, M.D.

Before: SAWYER, P.J., and O'CONNELL, SAAD, WILDER, ZAHRA, OWENS, and FORT HOOD, JJ.

PER CURIAM. This Court convened this special panel pursuant to MCR 7.215(J)(3) to resolve a conflict that arose between our decision in *Mazumder v Univ of Michigan Regents*, 270 Mich App 42; 715 NW2d 96 (2006), and our later decision in this case, *Ward v Siano*, 270 Mich App 584; 718 NW2d 371 (2006), vacated in part 270 Mich App 801 (2006). Pursuant to our conflict resolution rules, this Court vacated those portions of *Ward* that conflicted with *Mazumder*. MCR 7.215(J)(5). We now address the issue that the original panel in *Ward* would have decided differently if it were not bound to follow *Mazumder*. MCR 7.215(J)(1), (2).

The issue is whether a wrongful death plaintiff may rely on equitable tolling to escape the retroactive effect of our Supreme Court's decision in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004). In *Waltz*, our Supreme Court stated that the two-year period contained in the wrongful death saving statute, MCL 600.5852, was not tolled by serving a medical malpractice defendant with a notice of intent to sue. *Waltz, supra* at 655. Our Court recently reaffirmed that *Waltz* applies retroactively, *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503, 507-510; 722 NW2d 666 (2006), so plaintiffs who filed before *Waltz*, but incorrectly and detrimentally relied on their notice of intent to sue to toll the running of the saving statute, are barred from pursuing their claims. In *Mazumder, supra* at 62, however, this Court applied the doctrine of equitable tolling to a plaintiff who had relied on her understanding of the law as it existed before *Waltz* was issued. The dissent in *Mazumder* pointed out that uniform application of equitable tolling to similar plaintiffs would effectively circumvent those decisions that applied *Waltz* retroactively. *Mazumder, supra* at 71-72 (HOEKSTRA, P.J., concurring in part, dissenting in part). In our previous opinion in this case, this Court agreed that the retroactive application of

*Waltz* could not coexist with a blanket exception of equitable tolling woven solely from the general unfairness of retroactively applying *Waltz*. We concur with that reasoning. Because our Court has held that *Waltz* applies retroactively, we resolve the conflict in favor of our initial opinion in this case. We reinstate its reasoning and adopt it as the rule of law.

Equitable or judicial tolling ordinarily applies to a specific extraordinary situation in which it would be unfair to allow a statute of limitations defense to prevail because of the defendant's bad faith or other particular and unusual inequities. See 51 Am Jur 2d, Limitation of Actions, § 174, pp 563-564. Absent statutory language allowing it, judicial tolling is generally unavailable to remedy a plaintiff's failure to comply with express statutory time requirements. See 51 Am Jur 2d, Limitation of Actions, § 177, p 565 ("Equitable tolling is not permissible if it is inconsistent with the text of the relevant statute."); see also *Secura Ins Co v Auto-Owners Ins Co*, 461 Mich 382, 387-388; 605 NW2d 308 (2000); *Garg v Macomb Co Community Mental Health Services*, 472 Mich 263, 285 n 12; 696 NW2d 646 (2005). Inequities that justify judicial tolling must arise independently of the plaintiff's failure to diligently pursue the claim in accordance with the statute. See 51 Am Jur 2d, Limitation of Actions, § 174, pp 563-564, and § 177, p 565; see also *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 586, 590-592; 702 NW2d 539 (2005).

In *Waltz*, *supra*, our Supreme Court held that the plain language of MCL 600.5856 prevented it from tolling the saving statute, MCL 600.5852. The Court resolved the dispute over the relevant time frames specifically on the basis of statutory interpretation. *Waltz*, *supra* at 651-652. Therefore, it essentially concluded that the Legislature never intended to allow a

personal representative to bring a wrongful death claim outside the two-year period in MCL 600.5852, despite the filing of a notice of intent to sue. See *id.* at 651. In light of *Waltz*, any attempt on our part to excuse nonconformity with the statute would amount to amending the statute—in effect, legislating from the bench. See *Devillers, supra* at 590 n 65. This is not the function of the judiciary. *Id.*

Although a court may limit its novel interpretation of a statute to prospective application, *Pohutski v City of Allen Park,* 465 Mich 675, 696-697; 641 NW2d 219 (2002); see also *Bryant v Oakpointe Villa Nursing Ctr, Inc,* 471 Mich 411, 432; 684 NW2d 864 (2004), this Court has held that *Waltz* has full retroactive effect. *Mullins, supra* at 507-510. To allow a wholesale disregard of *Waltz*'s retroactive application on the basis of individual "unfairness" to each plaintiff would allow the constant exceptions collectively to swallow the rule. See *Devillers, supra* at 586-587, 590 n 65. The delicate and specialized tool of judicial tolling is ill-suited to supplant the expansive, all-encompassing remedy of limiting a rule to prospective application. By proposing to apply judicial tolling to every medical malpractice wrongful death plaintiff who is "unfairly" subjected to the time limits clarified in *Waltz*, the rationale of *Mazumder* subverts, piecemeal, our decision that *Waltz* applies retroactively. Stated differently, if reliance on the pre-*Waltz* understanding of the law were alone sufficient to justify a litigant's failure to comply with *Waltz*'s standards, our appellate courts would have limited the decision to prospective application. They did not. In our original decision in this case, as in *Mazumder*, plaintiff failed to demonstrate any inequity independent of his unknowing failure to comply with the retroactive time limits delineated in *Waltz*. This "inequity" is inadequate to sustain a claim for judicial tolling,

because it is directly related to plaintiff's unassisted failure to comply with the retroactively applicable time restraints, not on intervening, external circumstances. See 51 Am Jur 2d, Limitation of Actions, § 174, pp 563-564, and § 177, p 565. Therefore, we adopt the reasoning contained in *Ward*, conclude that judicial tolling should not operate to relieve wrongful death plaintiffs from complying with *Waltz*'s time restraints, and overrule those portions of *Mazumder* that conflict with this opinion.

The circuit court's order granting summary disposition to defendants is affirmed.

SAWYER, P.J., and SAAD, ZAHRA, and OWENS, JJ., concurred.

FORT HOOD, J., concurred in the result only.

O'CONNELL, J. (*concurring*). I concur with the majority's conclusion that *Mazumder v Univ of Michigan Regents*, 270 Mich App 42; 715 NW2d 96 (2006), inaptly applied judicial estoppel to alleviate the undesirable retroactive effects[1] of *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004). I write separately to ask the Supreme Court to grant leave and issue a full and final opinion (rather than a remand order) regarding the propriety of prospective or retroactive application of *Waltz*.

---

[1] I disagree with the practice of applying *Waltz* retroactively, but I do agree with the majority opinion that the procedural device employed by the original panel in this case was incorrect. *Waltz* should be limited to prospective application because it drew new legal distinctions and applied them in novel ways. However, reaching this result through piecemeal application of equitable principles impermissibly allows individual exceptions to swallow the rule. Judicial tolling is an ill-fitted and ultimately counterproductive patch for a hole that can only be adequately plugged by the wholesale, uniform limitation of *Waltz*'s holding.

### I. THE ISSUE

Unfortunately, much of the commotion created by *Waltz* has focused on one of two questions: whether MCL 600.5852 is a statute of limitations or a saving provision, and whether *Waltz*'s classification of § 5852 as a saving provision was an issue of first impression. The problem with these issues is that § 5852 indisputably qualifies as a saving provision, and its designation as such was not a new pronouncement. These issues were both resolved by the Supreme Court's holding in *Miller v Mercy Mem Hosp*, 466 Mich 196, 202; 644 NW2d 730 (2002), which succinctly stated, "Section 5852 is a saving provision, not a statute of limitations." However, this ruling made little difference to the bench and bar and essentially went unnoticed, as did *Waltz*'s *unpublished* opinion in the Court of Appeals.

The issue that truly ignited the firestorm was the related holding that because MCL 600.5852 was a "saving provision," the medical malpractice tolling provision, MCL 600.5856, did not toll it. *Waltz, supra* at 655. This was an issue of first impression on a settled area of law whose resolution would ordinarily be limited to prospective application.[2] See *Pohutski v City of Allen Park*, 465 Mich 675, 696-697; 641 NW2d 219 (2002); *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004). It was not a nominal extension of understood principles, but the plowing under of familiar and common legal concepts and the

---

[2] Limiting novel rules to prospective application preserves justice and discourages gamesmanship, especially in the area of procedural law. The practice of restraining a new rule's application implements the fundamental principle that procedural law should be consistent and reliable. A judicial system should seek to settle on fixed procedural requirements rather than holding litigants to standards that do not exist until they are impossible to meet.

reversal of years of standard practice. The ingrained nature of the pre-*Waltz* approach to tolling statutes, saving statutes, and other extensions of limitations periods, can best be seen by considering the legal concepts that developed along the way.

## II. THE ROAD TO *WALTZ*

### A

Before *Waltz*, our Supreme Court had consistently held that MCL 600.5852 essentially functioned as an extension or suspension of the limitations period for any action that survived death under MCL 600.2921. *Hardy v Maxheimer*, 429 Mich 422, 441; 416 NW2d 299 (1987); *Lindsey v Harper Hosp*, 455 Mich 56, 61; 564 NW2d 861 (1997). Because saving statutes were historically understood to extend[3] the underlying statutes of limitations, the saving statutes' extensions were naturally presumed to be subject to and modified by any tolling provisions that applied to the underlying statute. 54 CJS, Limitations of Actions, § 150, pp 203-205. Ironically, Corpus Juris Secundum cites *Miller, supra,*

---

[3] A straightforward reading of § 5852 fully supports the traditional understanding that it extends "the period of limitations," whatever it may be, and that it uses the extension to "save" the underlying cause of action from premature demise. The common pre-*Waltz* legal perspective was that the Legislature intended § 5852 to perform three functions: extend the underlying statute of limitations, save the underlying action, and set *new* time limits on the extension. *Lindsey* made "saving provision" a legal term of art, *Miller* applied a restrictive and exclusive definition to the term, and *Waltz* attributed the knowledge of that definition to the Legislature. Therefore, the judicial label applied to § 5852 sits at the epicenter of the current controversy. Even if § 5852 is *exclusively* a saving provision, *Waltz* was the first opinion to conclude that the Legislature intended this categorization to preclude the application of § 5856 to the saving provision's time limits.

for this very proposition.[4] 54 CJS, Limitations of Actions, § 150, p 204 n 6. As far back as 1982, in *Hawkins v Regional Med Labs*, 415 Mich 420, 438; 329 NW2d 729 (1982), Justice RYAN stated:

> There is no reason to doubt, as recognized by the *Janes* [*v Sackman Bros Co*, 177 F2d 928 (CA 2, 1949)] court, that statutory references to actions surviving by law include those actions brought under MCL 600.2922; MSA 27A.2922 for non-instantaneous death resulting from wrongful conduct. Therefore, MCL 600.5852; MSA 27A.5852 operates to extend the time in which to bring such suits. That statute . . . gives the fiduciary an *additional* two years from the date of issuance of letters testamentary in which to bring suit . . . . [Emphasis added.]

Justice RYAN's express use of the words "extend" and "additional" amply justified the common understanding in legal circles that MCL 600.5852 "saved" a cause of action by extending the relevant statute of limitations. A sample of the common understanding is again ironically found in *Miller, supra* at 202, in which the Supreme Court held that a similar extension found in MCL 600.5838a was "an alternative to the other periods of limitation," so "it is itself a period of limitation."

Adding to this perception of the statute's role was the generally accepted view of limitations on special rights. Legal authorities recognize that statutes that create new rights in derogation of the common law traditionally contain their own time limits, and those limits are categorized as either procedural or substantive *statutes of limitations*. See 54 CJS, Limitations of Actions, § 22, p 46. Because the saving statute, MCL 600.5852; the

---

[4] Adding to the irony, *Miller*'s distinction between a saving statute and a statute of limitations was also echoed in *Lipman v William Beaumont Hosp*, 256 Mich App 483, 491; 664 NW2d 245 (2003), to prove the proposition that § 5852 "extended" the statute of limitations.

survival statute, MCL 600.2921; and the wrongful
death statute, MCL 600.2922, were all parts of a statu-
tory scheme that displaced the common law's determi-
nation of which causes of action survived death, who
could bring them, and how much time they had, the
refined scheme needed time limits to prevent abuse of
the new process or prosecution of stale claims. The time
constraints in MCL 600.5852 are the only outside time
restrictions on a personal representative's ability to
enforce a decedent's claim on the estate's behalf. There-
fore, the phrase "statute of limitation" apparently ap-
plied to MCL 600.5852. In fact, in *Hardy, supra* at 430,
the Supreme Court quoted and adopted the following
language from *Janes v Sackman Bros Co*, 177 F2d 928,
932 (CA 2, 1949):

> "Since the present action is set up as a survival action
> under the combined remedy now granted by § 27.711,
> the three-year period of § 27.605 obviously applies, but is
> extended a maximum of three years by the provisions
> giving time for the appointment of an administrator in
> § 27.610 [the earlier MSA version of MCL 600.5852]. And
> plaintiff by his allegations has certainly brought his case
> within the limits which the combination of these two
> *limitation statutes* imposes." [Emphasis added.]

By expressly adopting and applying this reasoning to
the modern MCL 600.5852, the Supreme Court in
*Hardy* presumably accepted *Janes*'s classification of the
time limits as limitations periods and its classification
of MCL 600.5852 as a statute of limitations.

B

The language of MCL 600.5852 clearly supported this
classification, because the wrongful death "saving pro-
vision" contains various time constraints to which

personal representatives must adhere or risk summary disposition.[5] The saving provision, MCL 600.5852, reads as follows:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

Although the first part of the statute extends the statute of limitations and "saves" the cause of action by providing a personal representative with additional time to file suit, the second part, and certainly the last sentence, limits the amount of additional time available. This is important because when plaintiff filed his action, the relevant tolling provision, MCL 600.5856(d), stated that all statutes of limitations or repose are tolled during the six months after a medical-malpractice plaintiff serves a notice of intent to sue.[6] The relevant version of MCL 600.5856 stated, in its entirety:

---

[5] The concept of summary disposition raises an interesting, if somewhat ancillary, issue. The only language in MCR 2.116 that addresses grounds for receiving summary disposition of a time-barred claim is the phrase "statute of limitations" found in MCR 2.116(C)(7). If § 5852 is not a "statute of limitations" or its extension, and a suit was technically brought outside the original limitations period and the two-year period in § 5852, but before the three-year period has expired, is the suit "barred" by the "statute of limitations"? Technically, expiration of the original statute of limitations cannot bar the suit until the three-year saving period has expired. Have all the defendants in these matters moved under the incorrect court rule? Should the Supreme Court amend the rules to reflect its new distinctions?

[6] The statute was amended within a few weeks after *Waltz*'s release. Its amendment eliminated the statute's third subsection, so the old subsection d regarding tolling for notices of intent is now found in subsection c. MCL 600.5856.

The statutes of limitations or repose are tolled:

(a) At the time the complaint is filed and a copy of the summons and complaint are served on the defendant.

(b) At the time jurisdiction over the defendant is otherwise acquired.

(c) At the time the complaint is filed and a copy of the summons and complaint in good faith are placed in the hands of an officer for immediate service, but in this case the statute is not tolled longer than 90 days after the copy of the summons and complaint is received by the officer.

(d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b.

If the language in MCL 600.5852 makes it a statute of limitations or repose, then serving the notice of intent should toll the running of the "saving" time limits, providing a personal representative with roughly six additional months to file suit. Because the Legislature specifically and clearly placed time restrictions on personal representatives, the time constraints in MCL 600.5852 looked and acted like limitations periods. See *O'Brien v Hazelet & Erdal*, 410 Mich 1, 15; 299 NW2d 336 (1980) (cited with approval in *Miller, supra*). Therefore, the Supreme Court's adoption and application of the phrase "statute of limitations" to the statute made sense, and it certainly did not face any initial opposition.

C

I am further persuaded that the two-year and three-year time periods in MCL 600.5852 contain the essential elements of a statute of repose, so that, before *Waltz*, practitioners would have reasonably expected

MCL 600.5856 to toll those periods. The primary difference between a statute of limitations and a statute of repose is the impetus that starts the clock running. 54 CJS, Limitations of Actions, § 5, pp 22-23. "Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs . . . ." *Id.* at 22. Although this impetus is ordinarily an affirmative action by a defendant, neither Corpus Juris Secundum nor Black's Law Dictionary limits the definition to this type of statute of repose, but both sources recognize two primary elements. The first is that the statute starts running regardless of the accrual of a claim, and the second is the finality of the repose.

In the case of wrongful death, any injury to the deceased has already accrued, and the statute of limitations for any cause of action has already begun running. Therefore, the overall, three-year period in MCL 600.5852 begins running at a fixed date. As for finality, the statute's edict that "an action shall not be brought" is clearly a reflection of the Legislature's intent that a plaintiff loses the right to sue after the outside period expires. Therefore, there is an absolute, outside limit placed on the personal representative's ability to bring suit.[7]

---

[7] I note that the three-year limit was the one particularly at issue in *Waltz v Wyse,* unpublished opinion per curiam of the Court of Appeals, issued October 1, 2002 (Docket No. 231324). The conflict in that case was between the rather absolute language, "an action shall not be brought" more than three years "after the period of limitations has run," MCL 600.5852, and the argued extension of that outside period by MCL 600.5856. In another unpublished opinion, our Court had already found that the *two-year* time limit was specifically tolled by MCL 600.5856. *Chernoff v Sinai Hosp of Greater Detroit,* unpublished per curiam opinion of the Court of Appeals, issued March 22, 2002 (Docket No. 228014). Although not binding, *Chernoff* provides compelling evidence of the legal community's general understanding of the state of the law.

The two-year time period also begins running at a fixed date, the day the personal representative receives letters of authority. Although this period is not as determinable because of the unlimited potential for new personal representatives, it clearly works in tandem with the second portion of the statute to prevent the limitations period from being indefinitely suspended. Therefore, the bench and bar could reasonably anticipate that the express tolling of statutes of repose by § 5856 would apply to the repose periods contained in § 5852.

Harmonizing all these legal principles would only bolster the perception, which *Waltz* would later prove mistaken, that § 5856 applied to the relevant portions of § 5852. It appeared that the Legislature intended the limitations period contained in § 5852 to limit the extended statute of limitations for prosecuting any civil action that survived death under MCL 600.2921. See *Hardy, supra* at 449. This fully explained why the Legislature placed the "saving provision" in the chapter of the Revised Judicature Act that generally addresses statutes of limitations. This interpretation also fostered the legislative purpose behind §§ 2921, 2922, and 5852, which was to provide personal representatives with a reasonable opportunity to recover on the civil actions that were available to the decedent. While one may have been able to predict that § 5852 would continue to carry the label of a saving provision, nobody could have predicted with any degree of practical certainty that the mere designation as a "saving statute" cast its limitations periods in stone.

It oversimplifies the issue to assume that the Legislature's intent was obvious because § 5856 did not clearly include saving statutes among those that were

tolled.[8] The saving provision in § 5852 was enacted before the tolling provision in § 5856, and each of them was enacted long before the Supreme Court declassified § 5852 as a statute of limitations. Although the particular tolling provision in § 5856 made no direct reference to the saving statute or its limitations period, such a direct reference did not appear necessary under the classification adopted in *Hardy*, and the statute well predates *Miller*'s unassuming, unsupported, and one-sentenced distinction that forever pigeonholed the statute.

### III. THE INTERPLAY BETWEEN SECTIONS 5852 AND 5856

Our Court's first experience with the interplay between § 5852 and § 5856 came in *McNeil v Quines*, 195 Mich App 199; 489 NW2d 180 (1992). In *McNeil, supra* at 202-204, we rejected a medical malpractice defendant's argument for dismissal despite the fact that the original two-year statute of limitations, the two-year tolling provision in § 5852, and the three-year outside period of limitations in § 5852 all had expired before the plaintiff brought suit. The claim had accrued when the decedent died on June 20, 1981, but § 5852 preserved the claim when a personal representative was appointed on June 15, 1983, nearly two years later. *McNeil, supra* at 202-203. "Thus, on the facts of this case, the period of limitation was extended until June 15, 1985." *Id.* at

---

[8] Judging by the flurry of cases after *Waltz*, it appears that few practitioners predicted that the Supreme Court would hold that the exclusive status of § 5852 as a saving provision meant that it "plainly" lacked any period of limitations governing how long a cause of action was saved, so § 5856 obviously did not apply to it. Several honest defense attorneys have admitted their surprise at *Waltz*'s holding, and several others have trouble explaining why they delayed their clients' defense by failing to raise such a plain and obvious issue immediately after the Supreme Court decided *Miller*.

203. The plaintiff moved to add the defendant as a party on May 21, 1985, which, consistent with the common understanding, left 25 days on the clock. *Id.* at 203-204. However, that period quickly expired, and for nearly five years afterward, the case wound its way through the lower and appellate courts before the circuit court finally dismissed it without addressing the merits of the case. *Id.* at 201, 203-204. Although the relevant time limit in MCL 600.5805, and both time limits in MCL 600.5852, had long expired, we did not affirm the case's dismissal. Instead, we applied MCL 600.5856 to the limitations period as extended by MCL 600.5852, and held that the defendant's addition as a party[9] tolled this period so that the action "was not barred by the statute of limitations." *Id.* at 204.

*McNeil*'s holding runs directly contrary to the Supreme Court's reasoning and ultimate decision in *Waltz*, and that inconsistent path was only further beaten and blazed in the first major Supreme Court case that directly addressed these issues, *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000). In hindsight, *Omelenchuk* did not provide any indication that the Supreme Court was reconsidering the tradi-

---

[9] The fact that *McNeil* was applying a different subsection of § 5856 does not affect the analysis, because the Supreme Court's decision that the statute only tolls "statutes of limitations" derives from the opening language in § 5856, so it limits the application of all the subsections. Presumably, this means that if a personal representative timely and correctly files suit, but that suit is dismissed without prejudice, the personal representative may not renew the action if the suit has been pending so long that the letters of authority are more than two years old. The holding in *Waltz* also casts into doubt the handful of other tolling provisions that affect only "periods of limitation." See, e.g., MCL 600.5853 (defendant absent from state). One thing is clear: *Waltz*'s expansive holding has implications that reach far beyond the realm of medical malpractice, and personal representatives with every type of action should be paying close attention.

tional approach to wrongful-death, medical-malpractice procedures. Instead, from *Waltz*'s perspective, *Omelenchuk* was the first major example of a serious misstep by our appellate courts. In *Omelenchuk*, the Supreme Court expressly applied the tolling provision in § 5856(d) to the saving statute, and held that "the two-year limitation period" as marked from the date the plaintiffs were issued their letters of authority "was tolled one hundred eighty-two days." *Id.* at 577. Although a minor point in the analysis, this language obliterated any notion that *Hardy* may have misclassified § 5852 as a statute of limitations subject to further tolling. It also directly supported the principle from *McNeil* that the tolling provisions in § 5856 applied to the time limits in § 5852. In *Waltz, supra* at 652-655, however, *Omelenchuk*'s analysis would be overruled as unsupported and absent-minded dicta.

After *Omelenchuk*, our Court issued *Chernoff v Sinai Hosp of Greater Detroit*, unpublished opinion per curiam of the Court of Appeals, issued March 22, 2002 (Docket No. 228014). We issued *Chernoff* only a few months before the Supreme Court decided *Miller* and only a few more months before we issued our opinion in *Waltz*. In *Chernoff*'s first footnote, we reaffirmed our understanding of the correct legal approach by expressly holding that MCL 600.5856(d) tolled the two-year limitations period in MCL 600.5852.

In *Miller*, however, the Supreme Court followed up its rearview dicta regarding *Omelenchuk* with the cursory sleeping-giant observation that the wrongful-death statute was not a statute of limitations at all, but a saving provision.[10] *Miller, supra* at 202. Although *Mill-*

---

[10] I again note that Corpus Juris Secundum cites *Miller* for the proposition that Michigan's wrongful-death saving statute *extends* the underlying statute of limitations, arguably subjecting the extended time

*er*'s observation sounded the death knell for the application of § 5856 to § 5852, any chance that judges and practitioners would heed the toll was squelched by the Supreme Court's reasoning, which did not remotely appear to tighten up medical-malpractice procedures. Instead, the Court saved a malpractice litigant's cause of action by allowing a plaintiff to stack the discovery rule extension onto the two-year extension in § 5852. *Id.* at 203. The relevant aspects of *Miller*'s holding suggested that it was not reversing any established legal principles, but reinforcing them. For example, in *Miller*, the Supreme Court concluded that § 5852 applied to save a lawsuit, even though the two-year statute of limitations for medical malpractice had expired well before the decedent's death. *Id.* at 198, 202. It held that the discovery rule in MCL 600.5838a(2) provided the decedent with a *new* limitations period, because the decedent had not discovered the malpractice until a few months before his death. *Id.* Accordingly, the new limitations period did not expire before the decedent died, and § 5852 applied to save the cause of action. *Id.* at 203.

Following this analysis, the Court observed, "Section 5852 is a saving provision, not a statute of limitations." *Id.* at 202. Interestingly, the Court did not apply this observation to the discovery rule, MCL 600.5838a, which essentially operates in the same fashion as § 5852. The discovery rule essentially saves a suit from being barred by the statute of limitations by granting a litigant more time to sue. MCL 600.5838a(2) reads as follows:

---

limit to statutory tolling. 54 CJS, Limitations of Actions, § 150, p 204, n 6. This misinterpretation demonstrates the legal community's understandable surprise at the fact that *Miller* quietly contained a much more powerful legal principle than first suggested by its unassuming and limited posture.

Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim.

The clear language of this provision indicates that it "saves" a cause of action because it increases, or extends, the period for filing suit. Much like the "saving statute," § 5838a(2) never operates to shorten the period of limitation. *Miller, supra* at 203. This point is further supported by a brief discussion in *Miller* of whether the Supreme Court should address the argument that MCL 600.5838a(2), as applied to a personal representative, "*further* extended" the periods permitted in MCL 600.5852. *Miller, supra* at 201 n 3 (emphasis added). Therefore, *Miller* reinforced the common legal understanding that an extension of the original statute of limitations provides "an alternative . . . period of limitation." *Id.* at 202.

Careful comparison of § 5838a(2) and § 5852 reveals that the Legislature intended each statute to extend the underlying limitations period to allow litigants additional time to pursue their cause of action. However, each statute also contains its own limitations periods. In *Miller, supra* at 202, the Supreme Court determined that the six-month discovery rule contained in MCL 600.5838a(2) was a "period of limitations" within the meaning of the saving statute. The statute also provides that "the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim." MCL 600.5838a(2). It appears that

§ 5838a(2) acts as both a limitations period and, since it sets a date after which a "claim shall not be commenced," a statute of repose. See *O'Brien, supra.* Although § 5852 contains similar language, it was not categorized as either one. In my opinion, the same analysis that led the Supreme Court to classify § 5838a(2) as an alternative statute of limitations fully justified classifying § 5852 as an "alternative" statute of limitations as well.

Although I can only guess at why *Miller* expressly removed § 5852 from the "statute of limitations" category of procedural devices, none of the possible explanations could forecast *Waltz*'s application of the new, restrictive designation. Considering the context of *Miller*'s novel legal distinction, the most likely reason for the reclassification was concern that courts would dismiss personal representatives because they had not filed suit within the two-year period provided in § 5852, even though the original statute of limitations had not yet expired. Borrowing bits of ideas from *Hardy*, the Court apparently wanted it understood that the time limits in MCL 600.5852 were not independent periods of limitations subject to isolated enforcement, but that they extended existing periods to aid surviving litigants in the pursuit of justice. *Miller*'s short statement was an indirect and imprecise way of saying that statutes of limitations run out, whereas saving statutes add time. The designation prevented the law's misapplication in the particular case. It also discouraged future defendants from moving for summary disposition after the two-year limit expired, even if the underlying statute of limitations had not yet run. This is exactly how the opinion was interpreted and applied in *Lipman v William Beaumont Hosp*, 256 Mich App 483, 488-489; 664 NW2d 245 (2003) (analyzing the issue under the heading "MCL 600.5852 IS NOT THE GOVERNING STAT-

UTE OF LIMITATIONS"). Therefore, until *Waltz*, the bench and bar never spotted the lurking problem caused by *Miller*'s subtle legal distinction.

Six months after *Miller*, our Court again issued an opinion that conformed to the common understanding and totally contradicted the reasoning in *Waltz*. In *Fournier v Mercy Community Health Care Sys-Port Huron*, 254 Mich App 461, 468; 657 NW2d 550 (2002), our Court provided the following succinct analysis: "In this case, Fournier died on July 7, 1998. The letters of authority were issued on July 13, 1998. Therefore, the two-year statutory period of limitation began on July 13, 1998, and extended to July 13, 2000." Moreover, we only held that MCL 600.5856(d) did not toll the "statutory period of limitation" because the plaintiff failed to provide proper notice of her intent to sue. *Id.* at 469. Therefore, the bench and bar still had a concrete understanding of how § 5852 should apply, and that understanding was diametrically opposed to the reasoning stated in *Waltz*.

The only accurate statement that could be made about MCL 600.5852 at this point was that it had various elements of a statute of limitations, an extension to the statute of limitations, a saving statute, and a statute of repose. Although the indefinite and indistinct nature of the statute insinuates that the law was unsettled before *Waltz* clarified it, applying the tolling statute to the several facets and nuances of § 5852 all led to one conclusion—serving a notice of intent tolled a personal representative's time limits for filing suit.

The bench and bar use statutes and our opinions as maps to navigate the law. Before *Waltz*, two attorneys each could have read the maps with the goal of arriving at a certain city, say Mt. Pleasant. After *Waltz* established a series of unmarked detours, however, one

attorney finds himself in Grand Rapids, another attorney ends up in Lansing, and both attorneys are too far down the road to turn back and reach their original destination on time. In my opinion, the pre-*Waltz* road maps clearly established that whichever statute contained the outermost time limit for filing suit contained the relevant limitations period.[11] That statute was the "statute of limitations" for that particular action. This understanding was generally *consistent* with *Miller*.

Only after *Waltz* was decided was it easy to spot where the attorneys made their wrong turns. Few lawyers, if any, could have predicted that § 5856 presumably applied to the discovery rule's "statute of limitations," but never applies to the comparable limitations in § 5852. Reasonable attorneys unsurprisingly concluded that § 5856 applied to both, and so wound up redirected and far from their destinations.[12] In my opinion, it may be time for the Legislature to draw a new map. The current map leads litigants through a major construction project littered with orange barrels, detours, potholes, and, since the release of *Waltz*, speed traps.

#### IV. OUR PART

Because of the contentious nature of these cases and the numerous filings and plethora of different opinions in this Court on what have now become known as *Waltz* issues, I believe that this Court's efforts have been exhausted. It is time for the Supreme Court to grant

---

[11] To argue otherwise would have required a litigant to challenge the very definition of the legal phrases "limitations period" and "statute of limitations." *O'Brien, supra.*

[12] If I were following these road maps, I would have ended up remanded (or, more likely, reversed) in Marquette, with many of my appellate colleagues.

leave and render a complete and hopefully final decision on the issue whether *Waltz* should be applied prospectively or retroactively. In that regard and with due respect to my colleagues, I offer the following frank observations garnered from closely tracking the recent developments in this area of law.

What first strikes me about *Miller*, *Waltz*, and our Court's reaction to them is the dearth of substantive analysis at every turn. *Miller* whispered, without even the inflection of citation, that § 5852 fit tidily within only one technical legal category. When *Waltz* crashed to earth with seismic force, it noticeably lacked any review of *Miller*'s unsupported classification of MCL 600.5852 as exclusively a saving statute. It also failed to follow up the reasoning behind the source of the nomenclature, which could be found in *Hardy* and *Lindsey*. The opinion does not discuss the distinction, if any, between an extension to a statute of limitations and a saving provision, and does not cite any law for the vital proposition that tolling provisions do not apply to limitations periods in saving statutes. None of the cases before or since *Waltz* has analyzed the potential application of the phrase "statute of repose," which one might assume to be relevant, considering it is clearly a second item within the tolling statute's purview.[13] MCL 600.5856(d) (before 2004 amendment). *Waltz*, without explanation, merely mentions in its concluding section that MCL 600.5852 is not a statute of repose.

In its discussion of the relevant statutes, *Waltz* also omits any reference to the textualist's favored term, "unambiguous," which might open the door to more expansive judicial interpretation. Most importantly, however, not one line in *Waltz* was devoted to the

---

[13] In fact, the issue has not even received thorough briefing from the litigants.

efficacy, desirability, or prudence of retroactively enforc-
ing its application of the novel *judicial* classification of
the statute to the procedural time limits in § 5852. See
*Pohutski v City of Allen Park*, 465 Mich 675, 697-698;
641 NW2d 219 (2002); *Bryant v Oakpointe Villa Nurs-
ing Ctr, Inc*, 471 Mich 411, 432-433; 684 NW2d 864
(2004).

After *Waltz*, we issued *Ousley v McLaren*, 264 Mich
App 486; 691 NW2d 817 (2004) (adopting, without
analyzing or elucidating, the Supreme Court's repudia-
tion of *Omelenchuk*). As I have repeated ad nauseam,
*Ousley* failed to look beyond the Supreme Court's
demure declaration that *Omelenchuk* was wrong-
headed, so it must have been unreliable dicta. *Ousley*
summarily repeated *Waltz*'s hindsight observations and
indisputably allowed the Supreme Court's post hoc
disapprobation of *Omelenchuk* to taint its evaluation of
the relevant question: should *Waltz* apply retroactively?
Whether this special brand of judicial restraint should
control depends on the degree of shift in the law, the
judicial (rather than legislative) cause of the shift, and
the shift's effect on the legal bearings and practical
expectations of the bench and bar.[14] *Pohutski, supra.*

---

[14] In my view, practitioners were hard pressed to divine, consistently
with *Waltz*, the legislative intent regarding the relationship between the
medical-malpractice tolling provision and the wrongful-death saving
provision. After all, the Legislature included the "saving provision" in
Chapter 58 of the Revised Judicature Act (which generally addresses time
limitations for bringing causes of action) and placed it four statutes
before the tolling provision. MCL 600.5852 (wrongful-death saving
provision); MCL 600.5856 (tolling provision). Add to this apparently
sound legal footing an obstacle course of unassuming and largely indeci-
pherable opinions and an intricate web of various other statutory time
limitations, and the entire system becomes a snare for the unsuspecting
or politically unwary litigant. One fact has become obvious: even the most
experienced medical malpractice practitioners were unable to navigate
their way through the complicated legislative scheme. Although the

In *Ousley*, we adopted the Supreme Court's criticism of *Omelenchuk*'s latent infirmities and transformed that criticism into an assumption that those flaws always lay blatantly exposed and embarrassingly apparent, stultifying *Omelenchuk*'s authority ab initio. Although the *Ousley* panel correctly predicted the result that the Supreme Court would prefer, it could not predict the firestorm that would follow. Its general review of the elements of retroactivity and application of *Waltz*'s condemnation of *Omelenchuk* did not, and probably could not, account for the fact that untold numbers of plaintiff and defense attorneys were surprised by what they perceived as a dramatic change in the law. I think it is important to note that most members of the bench, including myself, were also surprised to discover that MCL 600.5852 did not contain any periods of limitations, so the general tolling statute "plainly" did not apply to it.

Our Supreme Court then issued a series of remand orders directing us to apply *Waltz* retroactively. These orders (some might say thankfully) did not require us to expend any more judicial or mental energy on the topic, nor did they require us to give a reasoned analysis for our decisions. While expressly avoiding the issue of the remand orders, the majority in *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005), failed to further the substantive analysis, partially due to its own reservations about whether the battle was too quixotic to join. This set the stage for *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448 (2006) *(Mullins I)*, vacated as to part III of the opinion, 269 Mich App 801 (2006), and, ultimately, for *Mullins v*

---

rearview mirror reflects a straight and narrow road, this image contrasts sharply with the perspective of the practitioners who were required to traverse it.

St Joseph Mercy Hosp, 271 Mich App 503; 722 NW2d 666 (2006) *(Mullins II)*.

With an anticlimactic sidestep, the majority opinion in *Mullins II* totally skirted the substantive issue of retroactivity.[15] Instead, it decided that, in light of the Supreme Court remand orders, there was no need to address the retroactivity issue head-on. See *Mullins II*, *supra* at 508-510. Although this represented a practical solution in light of the three remand orders, the majority opinion failed to provide any additional substantive guidance on the primary issue presented. Moreover, it did not adequately address the dissents, which addressed all the issues and set forth scads of reasons why the remand orders should not bind this Court and why *Waltz* should not apply retroactively.[16]

---

[15] In *Mullins II*, the majority resolved the following issue: Do remand orders constitute binding precedent on this Court? Enough members of the panel decided that the orders are binding. The problem? This was only a secondary issue. Because the panel decided that the remand orders were binding on them, they were not required to resolve the substantive issue of retroactivity, despite the fact that the retroactivity issue was at the heart of the conflict.

[16] The vote on the *Mullins II* conflict panel was 4-3. The vote to convene the conflict panel was almost equally divided. *Mullins II* generated four separate, distinct, and well-written opinions. As Judge COOPER pointed out in her dissent, each opinion phrased the issue differently and then proceeded to analyze the issue on the basis of how the issue was presented. *Mullins II*, *supra* at 541 (COOPER, J., dissenting). Judge WHITE made the point that she would be surprised if all seven Supreme Court justices agreed that these remand orders were binding on this Court. *Id.* at 536 n 4 (WHITE, J., dissenting). The majority opinion in *Mullins II* did not address the substance of the retroactivity issue even though the *Mullins I* majority only initiated the conflict procedure for that issue. Unsurprisingly, the substantive issue of retroactivity was decided on the strength of the opinion-less remand orders. I posit that if the remand order issue were expressly put to a second conflict panel vote, a majority of this Court would conclude that remand orders that lack a substantive review of the facts and law are not binding on other cases. This discussion merely exemplifies the need for an exhaustive opinion on the substantive issue of retroactivity.

From my perspective, I personally find it unfortunate that barrels of ink have flowed forth decrying the unanticipated and unjust misfortune litigants have suffered because of *Waltz*, but all the substantive legal analysis of this issue from our controlling precedent would not fill a postcard. Perhaps this alone should give us pause to reassess our function. Rather than squarely address the issue, we have now adopted the rule that remand orders are binding on this Court. They must be followed without discussion, and we are not free to ignore their substantive import, even if they are directed at a different case.

The primary problem with this approach is that we have not improved the clarity of the law, and we have saddled ourselves with a new, all-encompassing rule. Remand orders are now binding on this Court, and we must extrapolate from them and enforce whatever rule of law they may imply.[17] In my opinion, this does both Courts an injustice. Our Court must now yield to unsubstantiated remand orders, and, even more disturbing, the dissenting voice of any Supreme Court justice is now effectively hushed in favor of expediency. In full defiance of the new arrangement and noting my preference for learned opinions over remand orders on unsettled issues, I add the following concise analysis.

---

[17] I note that this type of presumed reasoning has already received spotty application in this Court. For example, the Supreme Court denied leave to appeal in *Chernoff, supra*, which implicitly meant that it had no qualms with its application of § 5856 to the first time limit in § 5852. Nevertheless, the majority opinion in *McMiddleton v Bolling*, 267 Mich App 667, 672 n 2; 705 NW2d 720 (2005), correctly refused to read anything into the denial and matter-of-factly stated that the Supreme Court's decision not to grant leave on a case was of no moment. It did not address the fact that the underlying case clearly contradicted the legal reasoning in *Waltz*. Although I think *Harris* ultimately reached an unpalatable result, I too prefer the approach that does not relegate us to poring over hundreds of "Actions on Applications" tea leaves to portend which way the legal wind might blow tomorrow.

Even after *Miller*, the bench and bar had every reason to believe that the tolling provision in § 5856 applied to § 5852. *Miller*'s analysis did not address the limitations period in § 5852, and could easily be distinguished because its primary issue involved the discovery rule's effect on the malpractice statute of limitations. *Miller* dealt with the issue of whether § 5852 applied at all in light of the fact that the original period of limitations had run. *Miller*'s classification regarding the distinction between saving statutes and statutes of limitations or repose only reinforced the traditional view, but was ultimately dictum because the designation of § 5852 had no bearing on the outcome of the case. The issue was whether § 5852 applied to the original malpractice limitations period or the discovery rule's limitations period. The case did not mention § 5856 and did not attempt to distinguish, much less overrule, *Hardy*, *Omelenchuk*, *O'Brien*, or *McNeil*. The classification adopted without citation in *Miller* merely reinforced its role as purely an extension of, rather than a substitute for, the original statute of limitations, and its central holding corresponds with the common understanding that the tolling provisions of § 5856 would apply to the extension limits provided in § 5852. Therefore, *Waltz* was an issue of first impression on a seemingly settled procedural issue, and the rule recognized in *Pohutski*, *supra*, should apply to it.

As explained at oral argument in this case, reaching the correct rule in any area of the law requires a step-by-step process. Each step is a different case or point of law, and each case builds on the cases that came before it. In this regard, the Supreme Court admitted in *Waltz*, *supra* at 653-655, that it had strayed in *Omelenchuk*, and that it had done so without careful analysis or serious thought. The cases leading to our conflict panels could be considered further missteps, but what is miss-

ing in all these cases is a thorough analysis of how we know that the *Legislature* did not intend MCL 600.5852 to fall within the ambit of MCL 600.5856, or why the time limits in MCL 600.5852 should not be construed as limitations periods. Without this initial analysis, we can never hope to explain how litigants should have anticipated *Waltz*. Every misstep leads to an incorrect conclusion with disastrous results and further uncertainty for litigants.[18] Our collective failure to engage in the rigorous debate that hones and strengthens rules leaves litigants with no guidance, forcing them to guess at which road will next be washed out from under them.

Now our path, and the path of all lower courts and litigants, will be further encumbered by the additional task of deciphering remand orders for substantive guidance.[19] Coupled with our lack of analysis, this distillation process will suggest that all the members of our

---

[18] If one were counting missteps, we would have to conclude that the plaintiffs' bar, the vast majority of the defense bar, the Court of Appeals, and the Supreme Court all wandered well off the path. Only certain members of the defense bar progressed on relatively solid ground. Unfortunately, it took the defense bar several years of scouting various routes before its members were able to pick up the trail and consistently articulate the reasons why tolling under § 5856 did not apply to the limitation periods in § 5852. In my opinion, this delay also counts as a misstep. Although ignorance of the law is no excuse, one has to wonder what caused everyone (other than an exceptional few) to lose their way so often.

[19] In the most recent Supreme Court case of *Woodard v Custer*, 476 Mich 545, 587-591; 719 NW2d 842 (2006) (*Woodard II*), Justice MARKMAN appended an exhaustive list summarizing recent Supreme Court decisions regarding the topic of medical malpractice. Noticeably absent from this list are any opinions or orders that conclude that *Waltz* should be applied prospectively or retroactively or that remand orders are binding on this Court. One could speculate regarding this obvious omission. However, rather than speculate, I think that the bench and bar need a learned opinion that addresses the merits of this issue. In my view, relying on remand orders to resolve complicated legal issues contravenes sound public policy.

Court and all the Supreme Court justices agree with the legal and substantive aspects of the issues, and that we simply choose to withhold our keys to enlightenment. Although this is certainly not the case, our collective decision not to frame the issues for further analysis or review leaves litigants, and anyone else who would dare to venture into this area of the law, scrambling in the dark. By withholding the new map, or refusing to draw it, we have abandoned our role of guiding litigants through the litigation process. Moreover, we will continue to stumble blindly through the issues ourselves, leaving this highly technical area of procedural law in a state of inexcusable, and apparently incurable, flux.

### V. CONCLUSION

With more than 60 cases involving *Waltz* issues in various stages of the appellate process, the time is ripe for the Supreme Court to address the substantive issue presented to the *Mullins II* conflict panel. Without a plenary discussion of the issues, we are left only with the remand orders. In my opinion, only a learned and exhaustive opinion will amicably put these and other unsettled issues to rest. I would simply ask that the Supreme Court grant leave to appeal in one of these cases and resolve the issue of whether *Waltz* should be applied prospectively or retroactively.[20]

---

[20] In light of *Waltz* and the Supreme Court's remand orders, one may ask why this concurring opinion is of any import. The answer is simple: neglect invites and perpetuates error. Each of us bears the onerous responsibility of applying, interpreting, and shaping the law, and we neglect this responsibility when we fail to justify, with well-reasoned analysis, our agreement or disagreement with a relevant point of law. Failure to engage in the debate hinders our hunt for a statute's intended purpose and generally stifles the formation of sound legal principles. If we all gently withdrew our voices from the arena of competing ideas, then mistakes would go unchallenged, and the process of correction would

WILDER, J. *(concurring).* I concur in the result reached in the majority opinion. I also join in parts I and II(A) of Judge O'CONNELL's concurring opinion, for the reason that I agree with Judge O'CONNELL's view that a plenary discussion by the Supreme Court concerning the propriety of prospective application of *Waltz v Wyse,* 469 Mich 642; 677 NW2d 813 (2004), would be of great benefit to the bench and bar.

---

suffer a nearly insurmountable setback. This case proves the rule. Lacking a clear direction from the appellate courts, and further lacking the independent ability to foretell which procedures may exist after it is too late to follow them, attorneys and lower courts will continue to stumble about, and this honorable judicial system will grow hopelessly unpredictable and intolerably frustrating for the people it was established to serve. In light of the number of *Waltz* cases filed in this Court, few, if any, practitioners could have predicted that, from its offhand distinction in *Miller,* the Supreme Court would extrapolate the rule that § 5856 did not toll the time limits for any statute designated a "saving statute." Therefore, I believe it was a mistake to apply *Waltz* retroactively, and I respectfully request that the Supreme Court or the Legislature take the necessary measures to repair the damage caused by this major misstep.