McLEAN v McELHANEY

Docket No. 257540. Submitted October 4, 2005, at Marquette. Decided December 13, 2005, at 9:00 a.m. Leave to appeal sought.

Donald and Christine McLean, personal corepresentatives of the estate of their deceased daughter, Karen McLean, brought a medical malpractice action in the Chippewa Circuit Court against Robert B. McElhaney and others. The court, Nicholas J. Lambros, J., granted the defendants summary disposition after determining that the plaintiffs' claims were time-barred. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting the defendants summary disposition. The plaintiffs' complaint was untimely under *Waltz v Wyse*, 467 Mich 642 (2004), which held that the tolling provision of MCL 600.5856(c) applies only to statutes of limitations or repose and does not toll the additional period for filing an action provided by the wrongful death saving statute when letters of authority are issued, MCL 600.5852. Under *Ousley v McLaren*, 264 Mich App 486 (2004), *Waltz* applies retroactively to the plaintiffs' complaint. The plaintiffs filed their complaint after the applicable period of limitations, as tolled by the filing of their notice of intent to sue, had run. The fact that the plaintiffs filed their notice of intent within two years of the issuance of their letters of authority does not distinguish their case from *Waltz* sufficiently to render *Waltz* inapplicable.

2. The trial court did not abuse its discretion by denying the plaintiffs' request for a voluntary dismissal without prejudice so that a new personal representative could be appointed to bring suit on the estate's behalf. The plaintiffs were afforded the full two years permitted under the wrongful death saving statute to file their complaint, but failed to do so through their own negligence. Dismissal without prejudice would have been inappropriate because the defendants would have been legally prejudiced by such an action. The defendants were entitled to summary disposition, which is an adjudication on the merits that bars relitigation under the doctrine of res judicata, and the defendants should not be subject to a second suit by a new personal representative.

Affirmed.

O'CONNELL, P.J., dissenting, stated that *Ousley* was wrongly decided and would hold that the time limitations established in *Omelenchuk v City of Warren*, 461 Mich 567 (2000), apply to this case rather than those established in *Waltz*. When the plaintiffs filed their complaint, it was considered timely under the undisputed rule of *Omelenchuk*. In this case, injustice results from the retroactive application of *Waltz*, which overruled uncontradicted case law and was not clearly foreshadowed. Equity should forbid the retroactive application of *Waltz*.

*White, Mack & McDonald* (by *Daniel W. White*) for Donald and Christine McLean.

*Feikens, Stevens, Kennedy & Galbraith, P.C.* (by *Linda M. Galbraith* and *Jeffrey Feikens*), for Robert B. McElhaney.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Donna A. Heiser*), for Maureen Phenix, Samuel W. Harma, and Hiawatha Behavioral Health.

Before: O'CONNELL, P.J., and SAWYER and MURPHY, JJ.

SAWYER, J. Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7). We affirm.

Plaintiffs brought this medical malpractice action following the death of their daughter, Karen McLean, who had been treated by defendants for alcoholism and depression. Karen was last seen by defendants on February 12, 2001, and died two days later. Plaintiffs were issued letters of authority appointing them personal corepresentatives of Karen's estate on March 13, 2001. They served defendants with a notice of intent to file a malpractice suit on October 29, 2002, and they filed their complaint on September 5, 2003. The trial court granted summary disposition in favor of defendants, finding that plaintiffs' claims were time-barred.

This Court reviews de novo a trial court's decision to grant a motion for summary disposition under MCR 2.116(C)(7). *Ousley v McLaren*, 264 Mich App 486, 490; 691 NW2d 817 (2004).

On appeal, plaintiffs first assert that our Supreme Court's decision in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), is inapplicable to this case because plaintiffs served defendants with a notice of intent within two years of the issuance of their letters of authority. We disagree.

Generally, malpractice actions must be brought within two years of the date of accrual to be timely. MCL 600.5805(6);[1] *Omelenchuk v City of Warren*, 461 Mich 567, 569; 609 NW2d 177 (2000), overruled in part on other grounds by *Waltz, supra* at 655. However, the running of the period of limitations will be tolled for 182 days if the plaintiff serves a notice of intent to file suit on the prospective defendants within 182 days of the time that the period of limitations would otherwise expire. MCL 600.2912b(1); MCL 600.5856(c);[2] *Omelenchuk, supra*, at 574-575. In addition

> [i]f a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run. [MCL 600.5852.]

However, MCL 600.5852 is a saving statute and not a statute of limitations. *Waltz, supra* at 650-651. Therefore, MCL 600.5856(c), which applies only to statutes of

---

[1] Formerly, MCL 600.5805(4).

[2] Formerly, MCL 600.5856(d).

limitations or repose, does not toll the additional period provided for filing an action under the wrongful death saving statute, MCL 600.5852. *Waltz, supra* at 648.

The period of limitations applicable to this action began to run on February 12, 2001, when the cause of action accrued. MCL 600.5805(6). Plaintiffs were issued letters of authority appointing them personal correpresentatives of Karen's estate on March 13, 2001. They served defendants with a notice of intent to file a claim on October 29, 2002. Because this notice of intent was served within 182 days of the expiration of the period of limitations, the running of the period of limitations was tolled for 182 days. MCL 600.5856(c); *Omelenchuk, supra* at 574-575. The period of limitations began to run again on April 29, 2003, at which point plaintiffs had 108 days left in which to file their complaint. Thus, plaintiffs should have filed their complaint by August 15, 2003. However, plaintiffs did not actually file their complaint until September 5, 2003.

Plaintiffs believed that they had an additional month in which to file their complaint because our Supreme Court in *Omelenchuk* indicated that the two-year period of limitations was calculated as beginning on the date of the appointment of the decedent's representatives, rather than on the date of the accrual of the claim. *Omelenchuk, supra* at 577. However, in *Waltz,* our Supreme Court clarified that any language in *Omelenchuk* indicating that the notice period tolling statute applied to the wrongful death saving statute was dicta and was overruled. *Waltz, supra* at 653-655. Therefore, plaintiffs' complaint was untimely under *Waltz.*

Plaintiffs attempt to distinguish *Waltz* because, unlike plaintiffs, the plaintiff in *Waltz* did not serve a notice of intent within two years of the accrual of her cause of action. This factual distinction is insufficient to

render *Waltz* inapplicable. Because plaintiffs served defendants with a notice of intent within two years of the accrual of their cause of action, they were entitled to the 182-day period during which the running of the period of limitations was tolled. MCL 600.5856(c). However, they did not file their complaint within two years of when letters of authority were issued to them. Therefore, the wrongful death saving statute did not save their cause of action. MCL 600.5852.

Plaintiffs next assert that *Waltz* should only be applied prospectively because it decided an issue of first impression that was not clearly foreshadowed. This issue has already been decided in *Ousley, supra* at 493-495, in which this Court held that *Waltz* neither overruled clear and uncontradicted case law, nor decided an issue of first impression whose resolution was not clearly foreshadowed. *Id.* at 493. This Court is bound to "follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals . . . ." MCR 7.215(J);[3] *Horace v City of Pontiac,* 456 Mich 744, 754; 575 NW2d 762 (1998). Moreover, in three orders entered the same day, the Supreme Court remanded cases to this Court for consideration as on leave granted, with the specific direction that *Waltz* be given full retroactive application. *Wyatt v Oakwood Hosp & Med Centers,* 472 Mich 929 (2005), *Evans v Hallal,* 472 Mich 929 (2005), and *Forsyth v Hopper,* 472 Mich 929 (2005). The Supreme Court's view of the matter seems clear. Accordingly, plaintiffs' assertion that *Waltz* should not be applied retroactively must fail.

---

[3] Formerly, MCR 7.215(H).

In a half-page analysis, plaintiffs further assert that *Waltz* amends the wrongful death saving statute by implication in violation of Const 1963, art 4, § 25, because the decision "reduce[s] by 182 days the time provided for bringing suit" under the wrongful death saving statute. Plaintiffs failed to raise this issue before the trial court. Therefore, it has not been properly preserved for review. *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 532-533; 672 NW2d 181 (2003). Moreover, plaintiffs' cursory treatment of this issue indicates that plaintiffs have abandoned it on appeal. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). However, we note that even were we to review this issue, we would be bound to reject plaintiffs' claim of error. See *Ousley, supra* at 495-496.

Finally, plaintiffs assert that the trial court should have permitted a voluntary dismissal of plaintiffs' claims without prejudice so that a new personal representative could have been appointed to file suit on behalf of Karen's estate. We disagree. This Court will not reverse the decision of a trial court denying a plaintiff's motion for voluntary dismissal "absent an abuse of discretion." *Mleczko v Stan's Trucking, Inc*, 193 Mich App 154, 155; 484 NW2d 5 (1992).

Plaintiffs rely on *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29; 658 NW2d 139 (2003), for their assertion that a successor personal representative would be able to timely file a complaint in this case. In *Eggleston*, our Supreme Court held that a successor personal representative has two years after appointment to file an action on behalf of an estate under the wrongful death saving statute. *Id.* at 30. However, the facts of the present case are distinguishable. In *Eggleston*, the decedent's widower "was appointed temporary personal representative and issued

letters of authority on April 4, 1997. He died on August 20, 1997." *Id.* at 31. The decedent's son was appointed her successor personal representative on December 8, 1998, and he filed a medical malpractice complaint on June 9, 1999. *Id.* Thus, the estate of the decedent was represented for a total of approximately 10¹/₂ months when the complaint was filed, and neither the initial nor the successor representative represented the estate for the full two years available to him under the wrongful death saving statute. Contrarily, plaintiffs were afforded the full two years permitted under the wrongful death saving statute to file their complaint, but failed to do so. Moreover, plaintiffs' failure was not due to the untimely demise of a predecessor representative, but to their own negligence in calculating the proper time for filing the complaint. Accordingly, we conclude that plaintiffs are not entitled to relief under *Eggleston.*

Moreover, dismissal without prejudice would have been inappropriate in this case because defendants would have been legally prejudiced if the trial court had taken that course of action. *African Methodist Episcopal Church v Shoulders,* 38 Mich App 210, 212; 196 NW2d 16 (1972). An order granting summary disposition is an adjudication on the merits. *Capital Mortgage Corp v Coopers & Lybrand,* 142 Mich App 531, 536; 369 NW2d 922 (1985). Here, defendants were entitled to summary disposition because plaintiffs failed to file their claim within the period established by the Legislature. Thus, defendants were entitled to a judgment on the merits that would bar relitigation under the doctrine of res judicata. *Id.* If plaintiffs' request for dismissal without prejudice had been granted, defendants would conceivably have been subject to the relitigation of plaintiffs' claim if a new personal representative was appointed to act on behalf of Karen's estate. Being

subject to a second suit that would otherwise be barred under the doctrine of res judicata would be legally prejudicial to defendants. Accordingly, we conclude that the trial court did not abuse its discretion by denying plaintiffs' request for dismissal without prejudice.

Turning to the points raised in the dissent, we do agree with *some* of the thoughts expressed in the dissent, but that does not change the fact that we are required to follow *Ousley*. *Ousley* requires us to apply *Waltz* retroactively. Our dissenting colleague's opinion is colorful and his metaphors are interesting, but the path we must follow is clear.

Tempting as it may be to utilize MCR 7.215(J)(2) in an effort to critique the reasoning in *Ousley* and in an effort to initiate the process of convening a special conflict resolution panel under the court rule, considering the high volume of appeals in this Court, in our judgment a better use of our limited judicial resources in this case would be to recommend that the Michigan Supreme Court take this case for substantive review. The Court could then address the retroactive application of the *Waltz* decision as determined in *Ousley* and provide its reasoning for whatever decision it announces.

Although not of precedential value, we note that the Supreme Court has denied leave in *Ousley*, 472 Mich 927 (2005). And as discussed above, the Supreme Court has remanded at least three cases to this Court directing us to give *Waltz* full retroactive effect. Even assuming that those orders are not to be given precedential effect beyond those individual cases, the Supreme Court's view of the matter is hardly ambiguous. We certainly share concerns that this Court, as well as trial courts and litigants, is better served with opinions that provide the legal rationale and reasoning for decisions

reached by the Supreme Court rather than conclusions or directives set forth in orders that pertain to the case in which application for leave is sought. But at this point, that is a task for the Supreme Court to take up if it so chooses. Given that Court's pronouncements on the topic, it would be little more than a fool's errand to involve 28 Court of Appeals judges in the somewhat laborious process set forth in MCR 7.215(J) to address the topic of how to handle the retroactive application of *Waltz*. Sound judgment would suggest that any change in the state of the law should come from the Michigan Supreme Court, if it is so desired.

Affirmed. Defendants may tax costs.

MURPHY, J., concurred.

O'CONNELL, P.J. (*dissenting*). In my opinion, *Ousley v McLaren*, 264 Mich App 486, 490; 691 NW2d 817 (2004), was wrongly decided. I would reject it and hold that the limitations established in *Omelenchuk v City of Warren*, 461 Mich 567, 577; 609 NW2d 177 (2000), rather than those of *Waltz v Wyse*, 469 Mich 642, 650; 677 NW2d 813 (2004), apply to this case.[1] Accordingly, I would reverse the trial court and provide plaintiffs their day in court.

When plaintiffs filed their complaint, any attorney in Michigan would have assured them that their action was timely, even though the period of limitations had technically run, because their properly delivered notice of intent to sue had temporarily stopped all the legal clocks. That was the law according to our statutes and our Supreme Court's holding in *Omelenchuk, supra* at

---

[1] Of course, if I were writing a majority opinion, I would be bound by *Ousley* and would be reduced merely to grumbling about it and declaring a conflict with it. As it is, I am free to give it the treatment it deserves.

577. *Omelenchuk* indicated that sending the statutorily mandated notice of intent to sue tolled the two-year period of the wrongful death saving statute, as well as the two-year period of limitations. This ruling made sense because the Legislature requires medical malpractice litigants to delay filing their lawsuits for approximately six months and also clearly intends wrongful death litigants to have a full two years to discover and bring any action on a decedent's behalf. Nevertheless, more than seven months after plaintiffs filed suit, our Supreme Court clarified that Michigan attorneys, including those that decided *Omelenchuk*, were only half right. *Waltz, supra* at 653-655.

*Waltz* held that the 182-day medical malpractice tolling provision tolled the period of limitations, but the clock tracking the wrongful death saving statute kept on ticking. *Id.* Therefore, if medical malpractice is severe enough to kill a patient, and the decedent's representatives are not appointed until six months have passed, the representatives effectively have eighteen months, rather than two years, to send their notice of intent and otherwise pursue their remedy. See *id.* In short, *Waltz* held that *Omelenchuk's* application of the 182-day tolling provision to the wrongful death saving statute was dicta and overruled it. Therefore, plaintiffs' complaint would have been untimely under *Waltz.* Imagine plaintiffs' relief when they realized that *Waltz* would have barred their claim if the Supreme Court had issued it only eight months earlier.

Unfortunately, our Court in *Ousley, supra* at 493-495, held that equity did not prevent the retroactive application of *Waltz*, notwithstanding the misperception and misapplication of the time limits by the entire bench and bar; the cryptic, arcane, and unforgiving procedural demands already facing medical malpractice

litigants; and the pitiable state of wrongful death claimants who are often grieving, disoriented, and oblivious to their situation's paradoxical urgency. The panel in *Ousley* held that *Waltz* neither overruled clear and uncontradicted case law, nor decided an issue of first impression whose resolution was not clearly foreshadowed. *Id.* at 493. I disagree. "Although the general rule is that judicial decisions are given full retroactive effect, a more flexible approach is warranted when injustice might result from full retroactivity. For example, a holding that overrules settled precedent may properly be limited to prospective application." *Pohutski v City of Allen Park*, 465 Mich 675, 695-696; 641 NW2d 219 (2002) (citations omitted).

In this case, injustice clearly results from retroactive application of *Waltz*. Contrary to the assertions in *Ousley*, the time limits provided in *Omelenchuk* represented uncontradicted, black-letter law to litigants. Neither statutory amendment nor further opinions from the Supreme Court had altered or questioned them. In fact, the analysis in *Ousley, supra* at 493-494, only points to one pre-*Waltz* opinion, *Miller v Mercy Mem Hosp*, 466 Mich 196; 644 NW2d 730 (2002), to support its contention that the Supreme Court's decision in *Omelenchuk* was too eroded and unreliable to justify reliance on it. While *Miller, supra* at 202-203, quietly contradicted one of *Omelenchuk's* reasons for extending the wrongful death time limit, on the opinion's surface it merely restates that MCL 600.5852 is a saving statute. It did not challenge or question *Omelenchuk* and did not even cite it. Moreover, in *Waltz, supra* at 653-654, the Supreme Court candidly acknowledged that mistakes in *Omelenchuk* had confused the bench and bar, so *Miller* was hardly a polished lamp redirecting litigants away from *Omelenchuk* and clearly lighting the law's future course. *Waltz* did not even dispute

the clarity or precedential value of *Omelenchuk*, but merely denigrated *Omelenchuk's* reasoning and declared its rule to be dictum. That the Supreme Court and the panel in *Ousley* later found serious flaws in *Omelenchuk's* reasoning does not change the fact that it was the undisputed law at the time,[2] and litigants followed it accordingly. While the Supreme Court is certainly at liberty to regret a legal pronouncement and afterward categorize it as dictum, we should not advise, much less require, litigants to try their hand at predicting which viable Supreme Court opinions will later find the bottom of the dictum dustbin and which are actually law.

On the other side of the same coin, if *Omelenchuk* fails because its standards were pure dicta, then *Waltz* stands as the original pioneer of this issue of first impression, and *Omelenchuk's* clear but errant guidance belies any legitimate claim that the result in *Waltz* was "clearly foreshadowed." The finest legal augur with the keenest sight and all the birds in the autumn sky could not have anticipated *Waltz's* outcome with enough certainty to provide rudimentary counsel to a prospective client. This analysis would also lead to the conclusion that equity forbids retroactive application of *Waltz*.

Undeniably, *Omelenchuk* stood as an unchallenged and clear pronouncement of the controlling timetables

---

[2] Timing is everything, after all. In this vein, I note that *Ousley's* lackluster impression of *Omelenchuk* was informed and prompted by *Waltz's* disparaging description of *Omelenchuk's* many defects. But *Waltz's* glance backward through the foggy lenses of remorse and self-doubt obfuscates the reality of what *Omelenchuk* meant to the bench and bar when it was released. Therefore, *Ousley* erroneously focused on the problems *Waltz* discovered through enlightened hindsight rather than on the seemingly fixed state of the law under *Omelenchuk* and the extent to which *Waltz* unexpectedly altered it.

until *Waltz* changed them. Plaintiffs responded to the original schedules by timely arriving at the station, buying an outrageously expensive ticket, and boarding the correct train. Fueled by even more money, the litigation engine pulled smoothly out of the station and chugged its way up to speed. Now *Ousley* ceremoniously presents plaintiffs with the Supreme Court's newly revised timetables; paternalistically explains to them how, under the new schedules, they were technically tardy to the station; warmly apologizes for the fallibility and humanness of the legal system; and demands that we unceremoniously throw plaintiffs from the speeding train.[3] I do not see any justice or equity in this course of action. *Ousley* should be disregarded, *Waltz* should only receive prospective application, and I would reverse.

---

[3] Having metaphorically stated my position, I concur with the majority opinion that the Supreme Court should grant leave in this case and address the issues raised in *Ousley*.