KING v McPHERSON HOSPITAL

Docket No. 284436. Submitted July 12, 2010, at Lansing. Decided October 19, 2010, at 9:00 a.m.

Diana King, as personal representative of the estate of Andrew Baker, deceased, brought a medical malpractice action in the Livingston Circuit Court on March 1, 2004, against McPherson Hospital, also known as Trinity Health-Michigan (McPherson), and Michael Briggs, D.O., Merle Hunter, M.D., and Emergency Physicians Medical Group, P.C. (the EPMG defendants), alleging that defendants' failure to properly diagnose Baker's medical condition on September 6, 2001, led to his death on September 8, 2001. The EPMG defendants, with McPherson concurring, moved for summary disposition on September 20, 2004, arguing that the statute of limitations barred the complaint because it was not filed within two years after Diana King was appointed personal representative. Defendants relied on *Waltz v Wyse*, 469 Mich 642 (2004), which held that sending a notice of intent to file the action under MCL 600.2912b does not toll the wrongful death saving provision found in MCL 600.5852. Defendants also contended that *Waltz* applied retroactively. Also on September 20, 2004, Timothy King (hereafter plaintiff) was appointed successor personal representative of the estate. Plaintiff argued that this case could be distinguished from *Waltz* because the notice of intent in this case was mailed within two years after the date of defendants' alleged malpractice. Plaintiff argued that *Waltz* cannot be applied retroactively, that the complaint was timely under *Omelenchuk v City of Warren*, 461 Mich 567 (2000), and that the court should apply judicial tolling to the limitations period to save the cause of action. On October 28, 2004, the court, Daniel A. Burress, J., denied defendants' motion. Defendants sought leave to appeal, and the Court of Appeals, OWENS, P.J., and CAVANAGH and NEFF, JJ., reversed the trial court's order in an unpublished opinion per curiam, issued July 12, 2005 (Docket Nos. 259136 and 259229), on the basis that the complaint was untimely pursuant to *Waltz*. The Supreme Court denied plaintiff's application for leave to appeal, *King v Briggs*, 474 Mich 981 (2005), and motion for reconsideration, *King v Briggs*, 474 Mich 1113 (2006). On remand in the trial court, the EPMG defendants moved for an order of dismissal, and McPherson

concurred with the motion. On January 26, 2007, the trial court, David J. Reader, J., granted the motion and dismissed plaintiff's claims. The Court of Appeals dismissed plaintiff's claim of appeal regarding that order for lack of jurisdiction in an unpublished order, entered April 11, 2007 (Docket No. 276287), and denied plaintiff's motion for reconsideration in an unpublished order, entered June 1, 2007 (Docket No. 276287). On November 28, 2007, the Supreme Court decided *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007), concluding that the *Waltz* decision does not apply to any cause of action filed after *Omelenchuk* was decided in which the saving period had expired (i.e., two years had elapsed since the personal representative was appointed) sometime between the date that *Omelenchuk* was decided and within 182 days after *Waltz* was decided. The Supreme Court held that *Waltz* controlled all other causes of action. On January 24, 2008, plaintiff moved to set aside the trial court's order dismissing his claims, relying on *Mullins* and arguing that, with respect to the previous opinion of the Court of Appeals holding that plaintiff's claims were time-barred, the law of the case doctrine was inapplicable because an intervening change in the law had occurred. McPherson argued that the law of the case doctrine applied regardless of the intervening change in the law, that the trial court lacked jurisdiction to grant relief under MCR 7.215(F)(1)(a), and that the holding in *Mullins* did not reverse the previous appellate decisions in this case. The EPMG defendants additionally contended that the trial court lacked authority to vacate a previous judgment of the Court of Appeals and that MCR 2.612(C)(1)(a), (e), and (f) were inapplicable. The trial court denied plaintiff's motion, concluding that the law of the case was the order of the Court of Appeals telling the trial court to dismiss the case. The Court of Appeals denied plaintiff's application for leave to appeal in an unpublished order, entered July 10, 2008 (Docket No. 284436). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 482 Mich 1154 (2008). On April 27, 2010, the Court of Appeals, DAVIS, P.J., and DONOFRIO and STEPHENS, JJ., issued an opinion in which it stated that, pursuant to MCR 2.612(C)(1)(f), plaintiff should prevail. Nevertheless, the Court affirmed the trial court's order on the basis of the decision in *Farley v Carp*, 287 Mich App 1 (2010), noting that it was following *Farley* only because it was required to follow it pursuant to MCR 7.215(C)(2) and (J)(1). The Court of Appeals noted its disagreement with *Farley* and called for the convening of a special panel of the Court of Appeals to resolve the conflict. 288 Mich App 801 (2010). The Court of Appeals then

ordered that a special panel be convened to resolve the conflict and vacated the April 27, 2010, opinion of the Court of Appeals. 288 Mich App 801 (2010).

After consideration by the special panel, the Court of Appeals *held*:

It is not disputed that this case was closed at the time that *Mullins* was decided. Under *People v Maxson*, 482 Mich 385 (2008), *Reynoldsville Casket Co v Hyde*, 514 US 749 (1995), *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653 (2001), and *Gillispie v Detroit Housing Comm Bd of Tenant Affairs*, 145 Mich App 424 (1985), a case given retroactive application only applies to pending cases. Therefore, the partial retroactive application of *Waltz* that was granted in *Mullins* could not apply to this closed case. While MCR 2.612(C)(1)(f) allows relief from a final judgment in certain circumstances, not reviving this case would not be an extraordinary circumstance for which relief should be granted under that court rule. Defendants' rights would be substantially detrimentally affected if this case were to be revived. There was no suggestion that defendants did anything inappropriate in obtaining the final judgment. Therefore, relief was not available under MCR 2.612(C)(1)(f).

Affirmed.

O'CONNELL, J., concurring in part and dissenting in part, stated that the majority opinion misconstrued both the scope and the purpose of the Supreme Court's order in *Mullins*. The *Mullins* order was not an intervening change of the law. In its use of the words "any causes of action," the Supreme Court did not limit the palliative nature of its order to only those cases still pending. Rather than being limited to a select group of plaintiffs, the *Mullins* order should be applied to all the litigants who had properly initiated actions under the rules that controlled before *Waltz* but had their litigation halted by the *Waltz* decision before receiving their day in court. This is how the *Mullins* order, an extraordinary edict by the Supreme Court, was intended to be applied. The original panel in this case properly applied the *Mullins* order, and a limited application of the order will result in a miscarriage of justice.

1. JUDGMENTS — RELIEF FROM JUDGMENTS.

Relief from a final judgment under MCR 2.612(C)(1)(f) requires both the presence of extraordinary circumstances that mandate setting aside the judgment to achieve justice and a demonstration that setting aside the judgment will not detrimentally effect the substantial rights of the opposing party; extraordinary circumstances

warranting relief from a judgment generally arise when the judgment was obtained by the improper conduct of a party.

2. JUDGMENTS — RETROACTIVE APPLICATION OF JUDGMENTS — CLOSED CASES.

New legal principles, even when applied retroactively, do not apply to cases already closed; when a case is given some form of retroactive application, it does not apply to cases that are no longer pending.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), for Timothy King.

*Johnson & Wyngaarden, P.C.* (by *David R. Johnson* and *Michael L. Van Erp*), for McPherson Hospital.

*Tanoury, Nauts, McKinney & Garbarino, P.L.L.C.* (by *William A. Tanoury* and *Anita Comorski*), for Michael Briggs, D.O., Merle Hunter, M.D., and Emergency Physicians Medical Group, P.C.

Before: K. F. KELLY, P.J., and MARKEY, O'CONNELL, TALBOT, WILDER, MURRAY, and FORT HOOD, JJ.

MURRAY, J.

## I. INTRODUCTION

The question presented to this panel is whether plaintiff may invoke MCR 2.612(C)(1)(f) to reinstate a case after entry of a final judgment in favor of defendants because of a subsequent change or clarification in the law. In the prior decision in this case, *King v McPherson Hosp*, 288 Mich App 801 (2010) (*King I*), the panel held that a plaintiff should be able to prevail under the court rule, but could not because of the prior decision in *Farley v Carp*, 287 Mich App 1; 782 NW2d 508 (2010), with which it disagreed. Accordingly, the prior panel called for a vote of all members of the Court on whether to convene a conflict panel to resolve this dispute, MCR 7.215(J)(3)(a), which obviously a majority

of the judges agreed to do. See *King v McPherson Hosp*, 288 Mich App 801 (2010) (order vacating prior opinion). For the reasons that follow, we hold that the trial court properly held that plaintiff could not reinstate the case under MCR 2.612(C)(1)(f).

## II. BACKGROUND

This case, as well as *Farley* and another pertinent case, *Kidder v Ptacin*, 284 Mich App 166; 771 NW2d 806 (2009), involves the Supreme Court's decision in *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007), in which the Court held that its prior holding in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), had only limited retroactive application. Specifically, the *Mullins* Court held in its order:

> We reverse the July 11, 2006, judgment of the Court of Appeals. MCR 7.302(G)(1). We conclude that this Court's decision in *Waltz v Wyse*, 469 Mich 642 [677 NW2d 813] (2004), does not apply to any causes of action filed after *Omelenchuk v City of Warren*, 461 Mich 567 [609 NW2d 177] (2000), was decided in which the saving period expired, i.e., two years had elapsed since the personal representative was appointed, sometime between the date that *Omelenchuk* was decided and within 182 days after *Waltz* was decided. All other causes of action are controlled by *Waltz*. In the instant case, because the plaintiff filed this action after *Omelenchuk* was decided and the saving period expired between the date that *Omelenchuk* was decided and within 182 days after *Waltz* was decided, *Waltz* is not applicable. Accordingly, we remand this case to the Washtenaw Circuit Court for entry of an order denying the defendants' motion for summary disposition and for further proceedings not inconsistent with this order. [*Mullins*, 480 Mich at 948.]

Because plaintiff's action fell within the "any causes of action" language and was otherwise within the

pertinent time frame as described in *Mullins*, and plaintiff had litigated the statute-of-limitations issue up and down the judicial system, the prior panel held that relief should be available under the court rule. *King I*, 288 Mich App 801. We respectfully disagree.

### III. ANALYSIS

As mentioned in the introduction, we hold that plaintiff cannot obtain relief from a final judgment under MCR 2.612(C)(1)(f) based upon a partially retroactive change or clarification in the law because, as explained below, both the Michigan and United States Supreme Court, as well as our Court, have held that even a case given full retroactivity does not apply to a closed case, as this one was when *Mullins* was decided.

We first have to recall that this case is before us on appeal from a trial court's grant of a motion for relief from judgment brought pursuant to MCR 2.612(C)(1)(f). As explained in *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999):

> In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. *Altman v Nelson*, 197 Mich App 467, 478; 495 NW2d 826 (1992); *McNeil v Caro Community Hosp*, 167 Mich App 492, 497; 423 NW2d 241 (1988). Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. *Altman, supra*; *McNeil, supra*.

As recently noted in *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010), "[w]ell-settled policy consider-

ations favoring finality of judgments circumscribe relief under MCR 2.612(C)(1)," and although relief under subrule (C)(1)(f) is the widest avenue for relief under this court rule, it nonetheless requires "the presence of both extraordinary circumstances and a demonstration that setting aside the judgment will not detrimentally affect the substantial rights of the opposing party." And our caselaw has long recognized that this court rule "contemplates that extraordinary circumstances warranting relief from a judgment generally arise when the judgment was obtained by the improper conduct of a party." *Id.* at 62, citing *Heugel*, 237 Mich App at 479; see, also, *Lark v Detroit Edison Co*, 99 Mich App 280, 283; 297 NW2d 653 (1980).

In order to obtain relief under this subsection, then, plaintiff had to prove that keeping in place a final judgment after the caselaw the judgment was based upon was partially retroactively reversed (i.e., the "circumstances") was so extraordinary that plaintiff should be afforded relief and that doing so would not be detrimental to defendants. Such a conclusion cannot be squared with a clear and unequivocal rule from our Supreme Court, a rule that itself is premised on United States Supreme Court precedent. The rule, plainly and recently set forth in *People v Maxson*, is that " '[n]ew legal principles, even when applied retroactively, do not apply to cases already closed.' " *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008), quoting *Reynoldsville Casket Co v Hyde*, 514 US 749, 758; 115 S Ct 1745; 131 L Ed 2d 820 (1995) (emphasis supplied).[1] The

---

[1] Even more recently, a plurality of the Court noted that its decision reversing the retroactive application of a prior case would apply to any injuries inflicted prior to its earlier decision, but only "as long as the claim has not already reached final resolution in the court system." *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455, 468; 795 NW2d 797 (2010) (opinion by WEAVER, J.).

basis for this longstanding rule is that "at some point, 'the rights of the parties should be considered frozen' . . . ." *Reynoldsville Casket*, 514 US at 758, quoting *United States v Donnelly Estate*, 397 US 286, 296; 90 S Ct 1033; 25 L Ed 2d 312 (1970) (Harlan, J., concurring). In *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653; 633 NW2d 1 (2001), our Court discussed this very point. Writing for the Court, Judge O'CONNELL explained why an intervening change of law was not a basis upon which to obtain relief from judgment:

> In any event, we would not be inclined to grant relief from the judgment in *Sumner I* [*Sumner v Gen Motors Corp*, 212 Mich App 694; 538 NW2d 112 (1995)]. An intervening change in law is not an appropriate basis for granting relief from a judgment; indeed, if it were, "it is not clear why all judgments rendered on the basis of a particular interpretation of law should not be reopened when the interpretation is substantially changed." 2 Restatement Judgments, 2d, § 73, illustration 4, p 200. [*Id*. at 667.]

An earlier case coming to the same conclusion is *Gillispie v Detroit Housing Comm Bd of Tenant Affairs*, 145 Mich App 424; 377 NW2d 864 (1985). There, the parties had agreed that a judgment after a trial should be entered in a particular, agreed-upon amount, and the defendant satisfied the judgment on January 20, 1984. *Id*. at 426. In August of that same year, the plaintiff filed a motion for relief from judgment, arguing that a decision issued just after the judgment was entered (*Gage v Ford Motor Co*, 133 Mich App 366; 350 NW2d 257 [1984], aff'd in part and rev'd in part 423 Mich 250 [1985]) showed that the interest calculations used for the judgment were the result of a mutual mistake, GCR 1963, 528.3(1), which is now MCR 2.612(C)(1)(a). *Id*. at 426-427. The trial court denied the motion, and our Court affirmed. In discussing whether a subsequent decision should apply retroactively to a closed case, we stated:

Three considerations are often applied to control retro-activity: (1) the purpose of the new rule, (2) the litigants' reliance on the old rule, and (3) the impact of the rule on the administration of justice. Consideration of the third factor alone militates in favor of denying the retroactive application of *Gage* to the present case. As the trial court noted, if *Gage* were to be applied to cases in which a satisfaction of judgment had already been executed, "[w]e could have 10,000 people coming back here and asking the court to change their judgments". The court's concern is not without basis. The application of *Gage* to an action which is no longer pending could well open the floodgates to other litigants eager to increase their recovery and could lead to disasterous results in relation to matters properly considered closed.

*Moreover, even if retroactive application was deemed fitting, it would not extend to cases in which the cause of action is no longer pending.* Normally, application of a new rule of law falls within one of three categories. A new rule of law may be (1) applied in all cases in which a cause of action has accrued and which are still lawfully pending, plus all future cases, (2) applied to the case at bar and all future cases, or (3) applied only to future cases. *Even the most far reaching category would not encompass the present case.* We believe it is clear that retroactive application of *Gage* would be inappropriate in the present case. [*Id.* at 429-430 (emphasis added).]

Here, it is undisputed that the case was closed at the time *Mullins* was decided. No appeal was pending before this Court or the Supreme Court, no motion was pending before the trial court, and the final judgment in favor of defendants had been entered. Under the Michigan Supreme Court decision in *Maxson* and the United States Supreme Court decision in *Reynoldsville Casket*, as well as our decisions in *Sumner* and *Gillispie*, the partial retroactive application of *Waltz* that was granted in *Mullins* could not apply to this closed case. Hence, not reviving this case would not be an extraordinary

circumstance under MCR 2.612(C)(1)(f), but instead would be the required course of action under binding precedent. Additionally, defendants' rights would be substantially detrimentally affected since they would now be required to relitigate a case that had already been through the appellate process, resulting in a final judgment that had been left idle for seven months. There is also no suggestion that defendants did anything inappropriate in obtaining the final judgment. *Rose*, 289 Mich App at 62. As such, relief was not available under MCR 2.612(C)(1)(f).

In his usual colorful and articulate way, our dissenting colleague argues that the order in *Mullins* was not a "change in the law," so the cases upon which we rely for our holding simply do not apply. After careful consideration of this position, there are several reasons why we respectfully conclude otherwise. First, the point of *Maxson* and the other cases is that when a case—here *Waltz*—is given some form of retroactive application, the retroactivity does not apply to cases that are no longer pending. The fact that these cases arose in the context of a motion for relief from judgment is because such a motion would only be brought if a new case were released that potentially revives what was already closed.

Second, whether one views the *Mullins* order as a change in the law or merely a "clarification" of the retroactivity of *Waltz* is of no moment. For there can be no dispute that prior to the *Mullins* order there was a conflict panel decision of this Court, see *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503; 722 NW2d 666 (2006), as well as at least one prior published opinion, see *Ousley v McLaren*, 264 Mich App 486; 691 NW2d 817 (2004), holding that *Waltz* had full retroactive application. Thus, the *Mullins* order was the Supreme

Court's decision clarifying the law on this issue. Because the *Mullins* order provided an answer different from that of the *Mullins* conflict panel and a prior published case, plaintiff attempted to use this new, favorable ruling on retroactivity to reopen his closed case. Consequently, we believe this case falls squarely within the cases we have applied here.[2]

Finally, as noted in *King I*, although "[t]he Supreme Court in its use of the words 'any causes of action' did not limit the palliative nature of its order to only those cases still pending," *King I*, 288 Mich App at 810,[3] it did not have to be so precise in this case since the law described above already makes clear that a retroactive decision does not apply to closed cases. If the Court had been crafting an exception to this apparently uniform rule, then it would have likely said so, but it did not. Hence, cases such as *Maxson, Reynoldsville Casket, Sumner,* and *Gillispie* control the outcome of this appeal. Some will certainly say, as have our dissenting colleagues and the prior *King I* panel, that this conclusion is "unfair" since plaintiff diligently pursued his rights and arguments up and down the judicial system. Indeed, the dissent adopts the *King I* panel's view of failing "to see the fairness in allowing only pending actions to receive the benefit of the Supreme Court's

---

[2] Indeed, the Supreme Court's *Mullins* order is analogous to a decision from the United States Supreme Court that resolves a conflict among the federal circuit courts of appeals. The federal courts have held that a Supreme Court decision breaking a conflict is not an extraordinary circumstance sufficient to reopen a case. See, e.g., *United States ex rel Garibaldi v Orleans Parish Sch Bd*, 397 F3d 334, 337-340 (CA 5, 2005); see, also, *Smith v Arbella Mut Ins Co*, 49 Mass App 53, 55-56; 725 NE2d 1080 (2000).

[3] The usual "limited" retroactive application typically applies to pending cases in which a challenge has been raised and preserved. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 586; 702 NW2d 539 (2005); *People v Cornell*, 466 Mich 335, 367; 646 NW2d 127 (2002).

order . . . ." But "fairness" cannot override our obligation to follow binding decisions from the appellate courts of this state, which without exception indicate that a case given retroactive application only applies to pending cases, i.e., it does not apply to closed cases.[4] In *James B Beam Distilling Co v Georgia*, 501 US 529, 541-542; 111 S Ct 2439; 115 L Ed 2d 481 (1991), the United States Supreme Court recognized the somewhat arbitrary result in precluding a closed case from being revived through retroactive application of caselaw (even one dismissed on statute-of-limitations grounds), but nonetheless concluded that finality principles overrode any such concerns:

> Of course, *retroactivity in civil cases must be limited by the need for finality*, see *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371 [60 S Ct 317; 84 L Ed 329] (1940); *once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed.* It is true that one might deem the distinction arbitrary, just as some have done in the criminal context with respect to the distinction between direct review and habeas: *why should someone whose failure has otherwise become final not enjoy the next day's new rule, from which victory would otherwise spring? . . .* Insofar as equality drives us, it might be argued that the new rule

---

[4] Interestingly, neither the dissent in *Farley*, nor the dissent in this case, nor the panel in *King I* even give lip service to the standards articulated in cases like *Rose*, which entails a multi-faceted inquiry. There is no doubt that plaintiff would have had a timely suit had a final judgment not been entered at the time *Mullins* was decided, but again the fact is that it was over, and no caselaw, statute, or court rule has been pointed out by the parties or prior courts that would authorize disregarding *Maxson* and similar cases in the name of fairness. Additionally, were we to agree with the dissent in this case, what would be the objective rule to apply in determining how long a case needs to have been final and closed before it cannot be revived by application of a retroactive case? One year, two years? Perhaps no limitation? This is an important question, and one the dissent has not answered.

should be applied to those who had toiled and failed, but whose claims are now precluded by res judicata; and that it should not be applied to those who only exploit others' efforts by litigating in the new rule's wake.

As to the former, independent interests are at stake; and with respect to the latter, the distinction would be too readily and unnecessarily overcome. While those whose claims have been adjudicated may seek equality, a second chance for them could only be purchased at the expense of another principle. " '*Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of that contest, and that matters once tried shall be considered forever settled as between the parties.*' " *Federated Department Stores, Inc.* v. *Moitie*, 452 U.S. 394, 401 [101 S Ct 2424; 69 L Ed 2d 103] (1981) (quoting *Baldwin* v. *Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 [51 S Ct 517; 75 L Ed 1244] (1931)). *Finality must thus delimit equality in a temporal sense, and we must accept as a fact that the argument for uniformity loses force over time.* [Emphasis added.]

Because this case was closed when *Mullins* was decided, we affirm the trial court's denial of the motion for relief from judgment, as the ruling did not constitute an abuse of discretion.

Affirmed.

K. F. KELLY, P.J., and MARKEY, TALBOT, and WILDER, JJ., concurred with MURRAY, J.

O'CONNELL, J. (*concurring in part and dissenting in part*). I concur with the majority that plaintiff diligently pursued his rights and arguments up and down the judicial system, including an appeal to our Supreme Court. I also concur with the majority and the panel in *King v McPherson Hosp*, 288 Mich App 801 (2010) (*King I*), that a limited application of the now famous order in *Mullins v St Joseph Mercy Hosp*, 480 Mich 948

(2007) (*Mullins III*), is "unfair" and, in my opinion, will result in a miscarriage of justice.

I write separately to state that the majority opinion misconstrues both the scope and purpose of the Supreme Court's order in *Mullins III*. The *Mullins III* order was *not*, as the majority opinion speculates, an "intervening change of the law." The law remained the same after the effective date of the *Mullins III* order as it was before the *Mullins III* order was entered. In this regard, the order was an extraordinary edict from our Supreme Court.[1] Rather than limit the *Mullins III* order to a select group of plaintiffs, I would apply the *Mullins III* order to all litigants unceremoniously thrown off the litigation train before receiving their day in court. This is how the *Mullins III* order was intended to be applied and how the *King I* panel applied this order. I see no justice or equity in creating two classes of plaintiffs and then unjudiciously picking which class of plaintiffs will have their day in court and which class of plaintiffs will be denied their day in court. To operate in such a manner is to re-create the same firestorm that generated the *Mullins III* order in the first place.[2]

## I. HISTORY OF THE *MULLINS* ORDER

In reality, the Supreme Court's order in *Mullins III* operates as a pardon for those plaintiffs who failed to timely discern the ramifications of the Supreme Court's

---

[1] Because the Supreme Court's order in *Mullins III* did not change the current state of the law, the majority's reliance on well-written cases such as *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653; 633 NW2d 1 (2001), and *People v Maxson*, 482 Mich 385; 759 NW2d 817 (2008), is misplaced.

[2] Ironically, four of the Court of Appeals judges involved in the current dispute (Judge DONOFRIO on the *King I* panel and Judges K. F. KELLY, O'CONNELL, and TALBOT on this special panel) were also involved in the *Mullins* appellate decisions.

decision in *Waltz v Wyse*.[3] The *Mullins III* order recognized the difficult time this Court experienced interpreting the current state of medical-malpractice law. It also recognized that numerous plaintiffs, through no fault of their own, had lost their ability to pursue their causes of action. In *McLean v McElhaney*, 269 Mich App 196, 207-208; 711 NW2d 775 (2005) (O'CONNELL, P.J., dissenting), rev'd 480 Mich 978 (2007), I metaphorically described the confused state of the law as follows:

> The finest legal augur with the keenest sight and all the birds in the autumn sky could not have anticipated *Waltz's* outcome with enough certainty to provide rudimentary counsel to a prospective client. This analysis would also lead to the conclusion that equity forbids retroactive application of *Waltz*.

> Undeniably, *Omelenchuk* [*v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000)] stood as an unchallenged and clear pronouncement of the controlling timetables until *Waltz* changed them. Plaintiffs responded to the original schedules by timely arriving at the station, buying an outrageously expensive ticket, and boarding the correct train. Fueled by even more money, the litigation engine pulled smoothly out of the station and chugged its way up to speed. Now *Ousley* [*v McLaren*, 264 Mich App 486; 691 NW2d 817 (2004)] ceremoniously presents plaintiffs with the Supreme Court's newly revised timetables; paternalistically explains to them how, under the new schedules, they were technically tardy to the station; warmly apologizes for the fallibility and humanness of the legal system; and demands that we unceremoniously throw plaintiffs from the speeding train. I do not see any justice or equity in this course of action. *Ousley* should be disregarded, *Waltz* should only receive prospective application, and I would reverse.

It is important to remember that every judge on this Court experienced some difficulties in attempting to follow the then current state of medical-malpractice law.

---

[3] *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004).

Because of these difficulties, Judge FITZGERALD and I declared a conflict with *Ousley* in the majority opinion in *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448 (2006) (*Mullins I*). Our Court then voted to convene a conflict panel and vacated part of the *Mullins I* opinion, and, in *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503; 722 NW2d 666 (2006) (*Mullins II*), the conflict panel produced four separate, divergent opinions. I believe it is fair to say that even the conflict panel was conflicted. Unfortunately, the *Mullins II* majority sidestepped the substantive analysis of the issue raised in *Mullins I* (whether *Waltz* should be applied prospectively or retroactively) and chose to resolve the case on the basis of a series of nonbinding remand orders the Supreme Court had issued, leaving both the bench and bar in a state of confusion.[4] After the aborted attempt in *Mullins II* to resolve the retroactivity issue, I described the chaotic situation in *Ward v Siano*, 272 Mich App 715, 721-722, 744; 730 NW2d 1 (2006) (O'CONNELL, J., concurring), rev'd 480 Mich 979 (2007):

> The issue that truly ignited the firestorm was the related holding that because MCL 600.5852 was a "saving provision," the medical malpractice tolling provision, MCL 600.5856, did not toll it. *Waltz*, [469 Mich] at 655. This was an issue of first impression on a settled area of law whose resolution would ordinarily be limited to prospective application. See *Pohutski v City of Allen Park*, 465 Mich 675, 696-697; 641 NW2d 219 (2002); *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004). It was not a nominal extension of understood principles, but the plowing under of familiar and common legal concepts and the reversal of years of standard practice. The ingrained nature of the pre-*Waltz* approach to tolling

---

[4] *Mullins II*, 271 Mich App at 506-509, quoting *Wyatt v Oakwood Hosp & Med Ctrs*, 472 Mich 929 (2005), *Evans v Hallal*, 472 Mich 929 (2005), and *Forsyth v Hopper*, 472 Mich 929 (2005). The confusion then turned to whether the Supreme Court's remand orders were binding on this Court.

statutes, saving statutes, and other extensions of limitations periods, can best be seen by considering the legal concepts that developed along the way.

* * *

With more than 60 cases involving *Waltz* issues in various stages of the appellate process, the time is ripe for the Supreme Court to address the substantive issue presented to the *Mullins II* conflict panel. Without a plenary discussion of the issues, we are left only with the remand orders. In my opinion, only a learned and exhaustive opinion will amicably put these and other unsettled issues to rest. I would simply ask that the Supreme Court grant leave to appeal in one of these cases and resolve the issue of whether *Waltz* should be applied prospectively or retroactively.[5]

## II. THE SUPREME COURT'S EDICT

*Mullins II* was appealed to the Supreme Court, which resulted in an end to the chaos and produced the now famous *Mullins III* edict:

We reverse the July 11, 2006, judgment of the Court of Appeals. MCR 7.302(G)(1). We conclude that this Court's decision in *Waltz v Wyse*, 469 Mich 642 (2004), does not apply to any causes of action filed after *Omelenchuk v City of Warren*, 461 Mich 567 (2000), was decided in which the saving period expired, i.e., two years had elapsed since the personal representative was appointed, sometime between the date that *Omelenchuk* was decided and within 182 days after *Waltz* was decided. All other causes of action are controlled by

---

[5] In my concurring opinion in *Ward*, I requested that the Supreme Court grant leave to appeal to determine the propriety of prospective or retroactive application of *Waltz*. It appears that the *Mullins III* order was the response to this request. In my opinion, the *Mullins III* order is an astonishing statement by our Supreme Court. It was a bold, assertive order issued to correct a wrong turn by this Court. The Supreme Court should be commended for their foresight; in one paragraph they devised the perfect solution for the then-existing problem.

> *Waltz.* In the instant case, because the plaintiff filed this action after *Omelenchuk* was decided and the saving period expired between the date that *Omelenchuk* was decided and within 182 days after *Waltz* was decided, *Waltz* is not applicable. Accordingly, we remand this case to the Washtenaw Circuit Court for entry of an order denying the defendants' motion for summary disposition and for further proceedings not inconsistent with this order. Reported below: 271 Mich App 503. [*Mullins III*, 480 Mich at 948.]

The Supreme Court order did not change the law; instead, it created a window in which *Waltz* did not apply retroactively. In my opinion, the Supreme Court order applies to all plaintiffs who were dispatched to the dustbin.[6] All plaintiffs who were properly on the litigation train and who properly exhausted all their appellate remedies should get their tickets stamped and be placed back on the litigation train with full rights and privileges. As the *King I* panel stated, "The Supreme Court in its use of the words, 'any causes of action' did not limit the palliative nature of its order to only those cases still pending." *King I*, 288 Mich App at 810.[7]

I concur with the result reached in the *King I* opinion. I would reverse the decision of the trial court.[8]

FORT HOOD, J., concurred with O'CONNELL, J.

---

[6] I note that the *King I* opinion and the *Mullins III* order do not fit into the category described as conventional legal analysis. Both are extraordinary statements that were made to afford justice to those plaintiffs who failed to comprehend the significance of *Waltz*.

[7] I am puzzled at the majority's attempt to place a square peg in a round hole. This type of thinking is what caused the chaos in the first place. See *Ousley*, 264 Mich App 486.

[8] As evidence of the complexity of this issue, I note that those Court of Appeals judges who have opined on the *King* case are split five to five: five judges favor limited application of the *Mullins III* order, and five judges favor applying the *Mullins III* order to all litigants who are denied their day in court.