*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JUDY ZILKA, by NANCY RHOTON, Personal Representative,

          Plaintiff-Appellant/Cross-Appellee,

UNPUBLISHED
August 12, 2021

V

ROBERT ZILKA,

          Defendant-Appellee/Cross-Appellant.

No. 350739
Wayne Circuit Court
Family Division
LC No. 18-103186-DO

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, the estate of Judy Zilka, by Nancy Rhoton as personal representative, appealed by leave granted[1] the judgment of divorce that was entered following trial. Defendant Robert Zilka cross-appeals the divorce judgment and an order denying his motion for relief from judgment under MCR 2.612. Although the trial court made errors, we are not left with a firm conviction that the division of the marital assets was unfair or inequitable under all of the circumstances presented such that reversal would be warranted. Accordingly, we affirm.[2]

Judy Zilka and defendant were married for over 30 years. At the time of the divorce proceedings they were in their mid-60s. The parties do not have any children. The marital home was located on farm property, and the parties also owned improved vacation property on a lake. They had both worked for the county road commission. Judy retired from the job with the road

---

[1] *Estate of Judy Zilka v Zilka*, unpublished order of the Court of Appeals, entered November 21, 2019 (Docket No. 350739).

[2] At oral argument, plaintiff reversed course and asked the panel to affirm the judgment of divorce. Because the property-division issues raised by defendant necessarily overlap with those that plaintiff had raised, we shall proceed with a full analysis.

commission in late 2011 or early 2012 due to poor health. Defendant also retired from his job with the road commission, but afterwards he worked as an independent contractor and later accepted employment with the local township. Defendant was working full-time for the township as of the date of trial. The parties accumulated numerous assets during the marriage and received income from employment, governmental, and retirement-related sources. Doctors diagnosed Judy with amyotrophic lateral sclerosis (ALS) in August 2017. Defendant became her caregiver, attending to her basic needs. But there was also evidence that defendant verbally, emotionally, and physically abused Judy throughout the marriage, including after her ALS diagnosis, leading to a conviction for domestic violence. Judy filed for divorce in March 2018, and in January 2019, Rhoton, Judy's sister, was appointed guardian and conservator for Judy because of her failing health. Home-health aides provided Judy with round-the-clock care. In March 2019, the trial court conducted a three-day bench trial. The focus of the trial was on the division of the marital assets and estate. On April 3, 2019, the trial court entered a judgment of divorce. Judy died on April 14, 2019.

The trial court awarded the parties' vacation lake house to defendant, along with all of the personal property located at the lake house.[3] The trial court ordered defendant to take out a loan against the lake house in the amount of $163,000, which was to be used to pay $125,000 to Judy, $38,000 in various attorney fees,[4] and 50% of any fees associated with the preparation of a Qualified Domestic Relations Order (QDRO). The trial court awarded Judy a life estate interest in the marital home, while granting defendant a remainderman interest.[5] The court also granted Judy a life estate interest in the personal property located at the marital home and on the farm. Defendant was awarded a remainderman interest in the marital-home personal property. The trial court awarded Judy a horse trailer, a van equipped with features for the handicapped, a deferred compensation retirement account held by defendant (by QDRO), her county retirement plan, and any checking and savings accounts currently in her name. The court made her responsible for any credit card or unsecured debts that were solely in her name. The trial court awarded defendant farm and excavation equipment that was not presently located at the marital home or farm, a pickup truck, a van, a Grand Torino, a defined benefit account, an IRA, a Roth retirement savings account, and his county retirement plan. Defendant was ordered to assume full liability on any joint debt accounts, which included a $75,000 balance on the mortgage (home equity line of credit) covering the marital home.[6]

As calculated and found by the trial court, the net value of the marital estate was $721,200 and the division of the real and personal property recited above resulted in defendant's receiving

---

[3] Our discussion in this paragraph is premised on the terms of the judgment of divorce.

[4] Of the $38,000, $10,000 was to be paid to defendant's own attorney and $28,000 to cover the fees of Judy's attorney.

[5] The trial court valued Judy's life estate interest at $125,000.

[6] The trial court did not specifically award either party spousal support. But the court viewed defendant's payment of the monthly $375 mortgage as a form of spousal support during the period in which Judy maintained her life estate interest.

property valued at $551,200 and Judy's receiving property valued at $170,000.[7] The court then subtracted the joint marital debt that defendant was ordered to pay, which totaled $143,000, from the $551,200 amount, leaving defendant with a property award of $408,200, compared to Judy's award of $170,000. This represented, roughly, a 70% to 30% split of the marital estate in favor of defendant. In light of the difference, the trial court ordered that a $100,000 life insurance policy insuring Judy's life was to be assigned to Judy.[8] More particularly, the judgment of divorce provided:

> [T]he Defendant has a life insurance policy with Primerica Insurance Company . . . . This policy is awarded to Defendant as his sole and separate property, free of any claim of [Judy] unless provided otherwise herein.
>
> Provided further, [Judy] is named in a rider on Defendant's Primerica Life Insurance Policy, insuring [Judy's] life. This rider is awarded and assigned to [Judy] as her sole and separate policy, free of any claim of interest of the defendant. He shall cooperate to assign, transfer or convey this rider to [Judy] as her sole and separate property, free of any claim of the Defendant. Plaintiff is entitled to name her separate beneficiary.

Plaintiff appealed by leave granted, and defendant cross-appeals.

In its brief on appeal, plaintiff argued that the property division was not fair and equitable with respect to Judy's award of marital assets. Plaintiff contended that the trial court, in awarding the life insurance policy to Judy, gave her an asset that "she could never benefit from while living." Plaintiff noted that the court's attempt to reduce the incongruity between the awards by giving Judy the insurance policy failed because Judy herself effectively received nothing. Plaintiff maintained that the court awarded Judy a lesser portion of the marital estate "because of her illness and anticipated short life expectancy." Plaintiff claimed that the trial court would have fairly and equitably divided the property but for Judy's serious medical condition. Plaintiff also complained that the trial court gave disproportionate weight on its nonspecific findings concerning the ages and earning abilities of the parties.

On cross-appeal, defendant argues that the trial court abused its discretion in dividing the marital estate. Defendant contends that the court failed to consider defendant's needs and his ability to pay joint marital bills. He also maintains that the trial court awarded the value of the life estate interest to Judy twice; first, by ordering defendant to make the $125,000 payment to her upon obtaining a loan against the lake property that was awarded to defendant, and second, by allowing her to live in the marital home for life, which the court had valued at $125,000. Defendant further argues that the division of marital property was not fair and equitable because the trial court

---

[7] In its calculations, the trial court did not include the value of the parties' county retirement plans, the van awarded to defendant, and the value of the Grand Torino, which vehicle the court determined was defendant's separate property.

[8] The trial court found that Judy had a terminal illness that would result in her death within six months to a year. Again, Judy died 11 days after the divorce judgment was entered.

"did not take into consideration that [Judy] was only going to live another fourteen (14) days after the issuance of the" divorce judgment. Defendant also claims that the trial court erred by awarding Judy the life insurance policy, considering that there was no evidence that it had any present cash value and that a court in a divorce proceeding has no authority to make an award of property to a third party, i.e., Judy's estate. Defendant additionally contends that he was entitled to premarital antiques that were not addressed in the judgment of divorce. Defendant next asserts that the trial court erred by denying his motion for relief from judgment under MCR 2.612, raising the arguments recited above. Finally, defendant argues that the trial court abused its discretion by awarding Judy $28,000 in attorney fees. He maintains that there was no showing that Judy would have to invade assets to pay those fees, that the court failed to consider defendant's ability to pay the fees, and that there was no evidence supporting the reasonableness of the attorney fees.

With respect to appellate review regarding the division of marital assets, this Court in *Richards v Richards*, 310 Mich App 683, 693-694; 874 NW2d 704 (2015), stated:

> We consider the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, we must decide whether the dispositive ruling was fair and equitable in light of those facts. The trial court's dispositional ruling will be upheld, unless this Court is left with the firm conviction that the division was inequitable. [Quotation marks, citations, and alteration omitted.]

This Court generally defers to the trial court's credibility findings. *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). With some exceptions, property that is acquired or earned during the marriage is generally considered marital property. *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010), citing MCL 552.19. Conversely, assets that are obtained or earned before the marriage are typically considered separate assets. *Cunningham*, 289 Mich App at 201.

Once a trial court determines which assets are to be considered marital property, it may "apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Cunningham*, 289 Mich App at 201, citing *Byington v Byington*, 224 Mich App 103, 110, 112-113; 568 NW2d 141 (1997). Mathematical equality is not required, but "any significant departure from congruence must be clearly explained." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). An unequal distribution of the marital estate is not inherently inequitable, so long as an adequate explanation for the distribution is provided. *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009). In *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992), our Supreme Court recited the various property-division factors, observing:

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. [Citation omitted.]

MCL 552.19 provides:

>   Upon . . . a divorce from the bonds of matrimony . . ., the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.

MCL 552.401 also addresses the division of real and personal property in the context of a divorce action, providing as follows:

>   The circuit court of this state may include in any decree of divorce . . . appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. . . . .

Taking into consideration the arguments by the parties on appeal and cross-appeal, we conclude that the trial court made errors, but we are not left with a firm conviction that the division of marital assets was, overall, unfair or inequitable, as the errors were ultimately harmless and actually balanced the equities.

The trial court's division of the marital estate was essentially fashioned around providing Judy with just enough assets to keep her afloat and in good care until her soon-to-be-expected death, instead of simply dividing the marital estate as if Judy were like any other litigant. Her terminal illness should not have played such a significant role in the distribution of the parties' property. The first mistake the trial court made was to factor into the property-division equation the $100,000 life insurance policy. There was no evidence that the policy had a cash value, and the court clearly viewed the award of the policy to Judy as being comparable to a $100,000 distribution to her as far as balancing the equities for purposes of dividing the marital estate. But this was not a distribution to Judy; it was effectively a distribution to her heirs or any named beneficiaries. MCL 552.19 and MCL 552.401 authorize a court to make a distribution of property to a "party" in divorce actions. "Michigan divorce statutes do not permit the courts to order conveyance of property or interests in property to third parties." *Smela v Smela*, 141 Mich App 602, 605; 367 NW2d 426 (1985); see also *Cassidy v Cassidy*, 318 Mich App 463, 495; 899 NW2d 65 (2017). Of course, any funds paid out under the life insurance policy would not go to Judy.[9] Indeed, her death was the necessary trigger for the distribution of the life insurance proceeds to beneficiaries or plaintiff. This is akin to a conveyance of property to a third party.

Moreover, if the trial court's intent was to place $100,000 on Judy's side of the ledger, which clearly was the court's motivation, it was speculative because there was no certainty

---

[9] Again, there was no evidence of cash value regarding the life insurance policy, and the court plainly did not award her the policy for the purpose of her cashing it out.

regarding when Judy would die. A judgment of divorce must include "a determination of the property rights of the parties[.]" MCR 3.211(B)(3).[10] Our Supreme Court has commented that "[t]here is no area of law requiring more finality and stability than family law[.]" *Hackley v Hackley*, 426 Mich 582, 598; 395 NW2d 906 (1986). And well-settled public policy favors the finality of judgments. *King v McPherson Hosp*, 290 Mich App 299, 304-305; 810 NW2d 594 (2010). The trial court's award of the life insurance policy to Judy was not consistent with the policy that favors the finality of judgments and the instant certainty that attaches to a determination of the property rights of a party at time of judgment.

Furthermore, awarding life estate interests in real and personal property because Judy had a terminal disease was, at a minimum, questionable. Placing a value on a life estate interest and a remainder interest introduces a high level of speculation in attempting to fairly and equitably divide a marital estate, even with expert testimony on the matter, which was not introduced in this case, and even though there are accepted formulas to calculate such values. We also note that awarding life estate and remainder interests to the parties in a divorce action is the antithesis of finality, leaving one ex-spouse waiting on the death of another to obtain fee ownership. Additionally, while a life estate interest is freely transferable and alienable, *Wengel v Wengel*, 270 Mich App 86, 100; 714 NW2d 371 (2006), being able to actually do so is highly unlikely given the limited nature of the interest. While our ruling is not to be interpreted as prohibiting an award of a life estate interest, it should be done sparingly in the context of divorce judgments.

Next, there is validity to defendant's contention of a "double payment" with respect to the value of the life estate interest. The $125,000 valuation of the life estate interest represented the value of Judy's right to live in the marital home for the remainder of her life. The trial court's order that defendant also pay Judy $125,000 out of the proceeds from a loan against the lake house was in effect awarding Judy twice the value of the life estate interest. But when the trial court totaled the asset values distributed to each party, the court only gave Judy credit for receiving $125,000 in assets and not $250,000 relative to the life estate matter. We fully appreciate that Judy died 11 days after the divorce judgment was entered, but we cannot judge the trial court's valuation decision in hindsight.

Additionally, MCR 3.206(D) governs an award of attorney fees in domestic relations actions, *Richards*, 310 Mich App at 700, and defendant is correct that the trial court made no findings under and did not analyze MCR 3.206(D). Rather, the record reflects that the trial court awarded Judy $28,000 in attorney fees as a mechanism to somewhat balance or equalize the distribution of the marital assets. Thus, the trial court erred by not complying with MCR 3.206(D).

MCR 2.613(A) provides that "an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." We conclude

---

[10] "Compliance with MCR 3.211(B)(3) ensures that divorce cases are not tried piecemeal subjecting the parties to a multiplicity of orders." *Yeo v Yeo*, 214 Mich App 598, 601; 543 NW2d 62 (1995).

that substantial justice does not demand that we reverse the judgment of divorce despite the various errors and otherwise problematic aspects of the trial court's findings and rulings.

With respect to the life insurance policy, were we to reverse that particular award and remand the case, it would be necessary, in order to achieve a fair and equitable distribution, to award Judy at least an amount equal to the $100,000 in insurance proceeds. Given Judy's death and that plaintiff estate stands in her shoes, this would entail shuffling the $100,000 back to defendant from the estate or beneficiaries and then ordering defendant to pay $100,000 to plaintiff. This would be a nonsensical exercise and a waste of judicial resources. In regard to the trial court's awards of life estate and remainderman interests, we see no point in reversing and undoing those awards under the circumstances because it is not necessary to do so for purposes of reaching a fair and equitable resolution. With respect to the trial court's failure to consider the value of the life estate interest twice in tallying the total assets awarded to Judy, if one does so it actually brings a greater congruence as to the division of the marital estate than existed under the trial court's analysis and calculations. In regard to the attorney fees, if we were to reverse the $28,000 award, a remand could potentially result in the court's once again ordering the payment of fees on contemplation of MCR 3.206(D). But even if the court found that MCR 3.206(D) did not justify an award of attorney fees, the $28,000 originally awarded was part of the court's effort to somewhat equalize the division of marital assets. And it would be appropriate on a remand to order defendant to pay plaintiff $28,000, not as an attorney-fee award, but to simply achieve a fair and equitable distribution of the marital estate. Thus, reversal is not warranted.

As to defendant's claim regarding premarital antiques, he has failed to provide us with adequate details to rule on the matter, and the briefing failure results in an abandonment of the issue.[11] With respect to defendant's argument that the trial court failed to consider his needs and his ability to pay when dividing the marital assets, the record belies defendant's claims. The finances and resources of both parties were stretched to breaking limits, especially considering the cost of Judy's round-the-clock care, and the court also placed some blame on defendant for wasteful spending over the years. Moreover, the lake house was awarded to defendant and completely paid off, and the court ordered defendant to take out a loan against the lake house so as to give him the ability to pay the debts ordered by the court. We also note that defendant now owns both the lake house and the marital home, along with a great deal of personal property, multiple accounts, and his retirement account. Finally, with regard to defendant's contention that the court failed to consider that Judy would perish within two weeks of entry of the divorce judgment, we find that there is no indication whatsoever in the record that the court knew that Judy was close to death.

---

[11] We note that defendant was awarded all of the personal property at the lake house and a remainder interest in the personal property still remaining at the marital home at the time of Judy's death. If the antiques were covered by these awards, defendant can petition the trial court on the matter.

We affirm.  We decline to award taxable costs to either party under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle