*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF ENVIRONMENTAL
QUALITY,

UNPUBLISHED
March 21, 2024

Plaintiff-Appellee,

v

Nos. 359378; 365177[1]
Chippewa Circuit Court
LC No. 2019-015539-CE

BOYD RHODES,

Defendant-Appellant.

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Plaintiff, the Department of Environmental Quality (DEQ), brought this action for injunctive relief under Parts 301 and 303 of the Natural Resources and Environmental Protection Act (the NREPA), MCL 324.101 *et seq.* seeking an order requiring defendant, Boyd Rhodes, "to restore the inland stream he rerouted and to restore the wetlands he dredged and filled," enjoining any further violations, and imposing civil fines. In Docket No. 359378, Rhodes appeals as of right the trial court's November 2021 judgment—following a grant of summary disposition in favor of the DEQ pursuant to MCR 2.116(C)(10)—(1) declaring portions of his property to be regulated wetlands and a regulated stream under the NREPA; (2) concluding that Rhodes unlawfully impacted the regulated wetlands and stream; (3) limiting Rhodes's ability to develop, and requiring him to restore, the affected property[2]; and (4) requiring that Rhodes pay a civil fine of $150,000. In Docket No. 365177, Rhodes appeals as of right the trial court's February 2023 order (1) denying

---

[1] On March 13, 2023, this Court entered an order consolidating these two appeals. See *Dep't of Environmental Quality v Boyd*, unpublished order of the Court of Appeals, entered March 13, 2023 (Docket Nos. 359378 and 365177).

[2] This case involved NREPA violations at three separate properties owned by Rhodes. On appeal, Rhodes only contests the trial court's orders regarding one of these properties.

Rhodes's request to modify the court's November 2021 judgment and (2) imposing deadlines on Rhodes to restore the property and pay the civil fine.

In both appeals, Rhodes argues that this Court should reverse the trial court's orders and/or remand for a new trial or hearing because (1) his trial counsel was negligent by failing to present a defense on his behalf; (2) the DEQ failed to establish that the relevant property constituted regulated wetlands or a regulated stream; and (3) the civil fine imposed was unjustified. We affirm.

## I. BACKGROUND

Rhodes maintains that, before he purchased the subject property, he walked the property with Jay Parent, a DEQ employee. Rhodes intended to develop a home and pond on the property and testified that he wanted to make sure he could do so "with no problem[s]." According to Rhodes, neither Parent nor "Ruth"[3] ever "said a word about wetlands." After purchasing the subject property, Rhodes established a roadway, cleared trees from the area, dug a ravine, and began digging a pond. Rhodes described the area where he dug the ravine as an "impression" or drainage ditch, stating that he and Parent viewed this feature before Rhodes purchased the subject property. Rhodes also testified that he, Parent, and Ruth walked the property again after trees were removed. Rhodes stated that he informed Ruth of his future plans, and "she didn't see any problems with any of it[.]"

Parent, however, did not remember ever walking the subject property with Rhodes. Justin Smith, an Environmental Quality Specialist and former Environmental Quality Analyst for the DEQ, averred, based on his study of the subject property, that the property contained regulated wetlands. Smith also averred that Rhodes, presumably when constructing the pond, "dredged approximately 2 acres of regulated wetlands and filled approximately 1.7 acres of regulated wetlands" at the property. Smith further averred that Rhodes "filled and excavated a stream" (the impression or ditch described by Rhodes) there.

The DEQ filed this action in April 2019. Following unsuccessful mediation, the DEQ moved for a preliminary injunction enjoining Rhodes from committing any further NREPA violations at the subject property, which the trial court granted. The DEQ then moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that Rhodes violated the NREPA at the subject property by (1) dredging the pond on regulated wetlands and (2) rerouting a regulated stream, both without a permit to do so. Relying on Smith's affidavit and supporting evidence, the DEQ asserted that "there are no scientific disputes about the existence of regulated wetlands" at the subject property and Rhodes violated MCL 324.30304 via his work on the pond without a permit. The DEQ also maintained that there was no factual dispute that Rhodes improperly rerouted a regulated stream within the meaning of MCL 324.30101(i)(*ii*). The DEQ further argued that it was irrelevant whether Parent or anyone else ever told Rhodes he could perform the work without a permit.

---

[3] Ruth's last name and specific position are not identified in the record, but she apparently was a DEQ employee who allegedly visited the subject property on numerous occasions.

In response, Rhodes argued that there were "several issues of material fact" precluding summary disposition. Rhodes first noted the inherent complexity involved in determining whether land is a regulated wetland. Rhodes maintained that he relied on the DEQ agents' representations that no permit was required for his work on the subject property. Rhodes also asserted that he had rebuttal witnesses who could testify at trial that multiple representatives of the DEQ visited the subject property and viewed his work on the property numerous times before he was notified that a permit was required. Rhodes argued that the DEQ was thus estopped from suing for any NREPA violations, and that any such claim violated the applicable statute of limitations because he started work at the subject property more than six years earlier. Lastly, Rhodes argued that summary disposition was improper because the court must make credibility determinations regarding the testimony of Rhodes and any of the DEQ's witnesses. Rhodes did not provide any affidavits or documentary evidence to support his response, nor did he attach or cite to any specific portions of his deposition testimony.

In reply, the DEQ argued that it was entitled to summary disposition because Rhodes failed to provide specific facts via affidavit or otherwise showing any genuine issue for trial. The DEQ also argued that Rhodes's violations occurred within the applicable statute of limitations, and that Rhodes was strictly liable for such violations notwithstanding the complexity of determining whether particular land is a regulated wetland.

The trial court concluded that summary disposition was warranted in the DEQ's favor and scheduled a trial to determine damages. In support of its damage claim, the DEQ argued that an injunction requiring Rhodes to restore the relevant wetlands and stream was warranted, the court should enjoin Rhodes from any similar NREPA violations in the future given his blatant historical disregard for following environmental laws at numerous different properties, and the court should fine Rhodes $150,000 to sufficiently account for both the ecological harm at the subject property and Rhodes's willful defiance of environmental laws. In contrast, Rhodes requested the court "impose a reasonable fine and reasonable conditions related to restoration" of the subject property. Rhodes acknowledged that the court determined he broke the law, and that he "made a mistake" by either "believing the officials he spoke with or . . . [by] not more completely investigating the projects." But Rhodes asked the court to consider various circumstances allegedly demonstrating the unreasonableness of the DEQ's requested relief.

On November 3, 2021, the trial court entered an order (1) declaring portions of his property to be regulated wetlands and a regulated stream under the NREPA; (2) concluding that Rhodes unlawfully impacted the regulated wetlands and stream; (3) limiting Rhodes's ability to develop, and requiring him to restore, the affected property; and (4) requiring that Rhodes pay a civil fine of $150,000. Rhodes, through new counsel,[4] appealed this order. The deadlines for Rhodes to submit a restoration plan for the subject property and pay the first installation of his fine were stayed.

In November 2022, Rhodes moved to modify the November 2021 judgment. Specifically, Rhodes requested the court to approve an alternate restoration plan that allowed him to keep the

---

[4] This attorney represented Rhodes in the remainder of the trial court proceedings.

pond by restoring "some fill material" and "the ditch" at the subject property. Rhodes also requested a substantial reduction of his civil fine. Rhodes argued that modification of the judgment was warranted under MCR 2.612(C)(1)(f) because Rhodes's prior counsel failed to investigate and present arguments and evidence as needed to properly defend the case. Rhodes further argued that his alternate restoration plan, prepared by environmental consultant Paul Kreski after studying the subject property, was reasonable and should replace the DEQ's plan. Rhodes also asserted that the $150,000 fine imposed was excessive because it reflected an effort to punish him under two false premises: that he was a bad actor with significant financial resources. The court denied the motion and set deadlines for Rhodes to restore the subject property and pay the civil fine. Rhodes now appeals.

## II. MODIFICATION OF JUDGMENT

Rhodes argues that reversal and/or a new trial is warranted because his initial counsel failed to present a defense to the DEQ's allegations. We disagree.

As an initial matter, Rhodes argued to the trial court that the errors of his initial counsel warranted modification of the court's judgment under MCR 2.612(C)(1)(f) because his counsel's failure "to provide briefing to support legal arguments, to call witnesses or to offer substantive evidence" amounted to "an extraordinary circumstance supporting modification of the judgment." But Rhodes makes no mention of MCR 2.612 on appeal. Instead, he relies on various rules of professional responsibility and contends that his initial counsel acted unreasonably and below minimum professional standards, which prejudiced Rhodes because the court was presented with a one-sided perspective. "In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2 (cleaned up). To the extent Rhodes makes arguments for the first time on appeal unrelated to MCR 2.612, these are unpreserved, waived, and we are not obligated to consider them. *Id.* at ___; slip op at 3. We find that the circumstances of this case do not warrant our review of these unpreserved arguments[5] and thus our analysis is limited to whether modification was warranted under MCR 2.612(C)(1)(f).

"This Court reviews a trial court's decision whether to set aside a judgment under MCR 2.612 for an abuse of discretion." *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). "A trial court has not abused its discretion if its decision results in an outcome within the range of principled outcomes." *Id.* "The interpretation of a court rule, like a matter of statutory interpretation, is a question of law that this Court reviews de novo." *Id.* (cleaned up).

---

[5] We will generally decline to address an unpreserved issue unless the failure to do so would result in manifest injustice, if the issue involves a question of law and the facts necessary for its resolution have been presented, or resolving the issue is necessary to properly determine the case. *Miller v Mich Dep't of Corrections*, 343 Mich App 104, 119; 996 NW2d 738, (2022). Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987).

MCR 2.612(C)(1) provides six grounds under which a court may relieve a party from "a final judgment, order, or proceeding":

> (a) Mistake, inadvertence, surprise, or excusable neglect.
>
> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).
>
> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
>
> (d) The judgment is void.
>
> (e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.
>
> (f) Any other reason justifying relief from the operation of the judgment.
>
> In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. [*King v McPherson Hosp*, 290 Mich App 299, 304; 810 NW2d 594 (2010) (citations omitted).]

An attorney's neglect falls under the plain words of MCR 2.612(C)(1)(a) and thus it cannot be used to support a ground for relief under MCR 2.612(C)(1)(f). Nevertheless, Rhodes has not established that his initial counsel's failures constitute extraordinary circumstances warranting relief under MCR 2.612(C)(1)(f). While Rhodes faults his initial counsel for failing to investigate the case, present evidence in his defense, and make various arguments that allegedly would have been successful below, none of these failures resulted from any improper conduct of the DEQ. Further, an attorney's negligence is ordinarily imputed to the client. *Amco Builders & Developers, Inc v Team Ace Joint Venture*, 469 Mich 90, 96; 666 NW2d 623 (2003). Accordingly, the trial court did not abuse its discretion in denying his motion to modify the judgment under MCR 2.612(C)(1)(f).

### III. SUMMARY DISPOSITION

Next, Rhodes argues that the trial court erred by granting summary disposition to the DEQ because the DEQ failed to prove elements necessary to succeed on its claims, including that his work at the subject property unlawfully impacted regulated wetlands or a regulated stream. We disagree.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When reviewing a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the non-moving party. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. "[T]he nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (citations omitted), quoting *Quinto v Cross and Peters Co*, 451 Mich 359, 362-363; 547 NW2d 314 (1996).

"The NREPA is a comprehensive statutory scheme containing numerous parts, all intended to protect the environment and natural resources of this state." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 13; 896 NW2d 39 (2016) (cleaned up). "Part 303 of the act governs activities in wetlands." *Id*. (cleaned up); see also MCL 324.30301 *et seq*. MCL 324.30304 states:

> Except as otherwise provided in this part or by a permit issued by the department under this part and pursuant to part 13, a person shall not do any of the following:
>
> (a) Deposit or permit the placing of fill material in a wetland.
>
> (b) Dredge, remove, or permit the removal of soil or minerals from a wetland.
>
> (c) Construct, operate, or maintain any use or development in a wetland.
>
> (d) Drain surface water from a wetland.

As defined by MCL 324.30301(n),

> "Wetland" means a land or water feature, commonly referred to as a bog, swamp, or marsh, inundated or saturated by water at a frequency and duration sufficient to support, and that under normal circumstances does support, hydric soils and a predominance of wetland vegetation or aquatic life. A land or water feature is not a wetland unless it meets any of the following:
>
> (i) Is a water of the United States as that term is used in section 502(7) of the federal water pollution control act, 33 USC 1362.
>
> (ii) Is contiguous to the Great Lakes, Lake St. Clair, an inland lake or pond, or a stream. As used in this subparagraph, "pond" does not include a farm or stock pond constructed consistent with the exemption under section 30305(2)(g).
>
> (iii) Is more than 5 acres in size.

(iv) Has the documented presence of an endangered or threatened species under part 365 or the endangered species act of 1973, Public Law 93-205.

(v) Is a rare and imperiled wetland.

Part 301 of the NREPA concerns inland lakes and streams. See MCL 324.30101 *et seq*. Under MCL 324.30102, a person without a permit shall not "[c]reate, enlarge, or diminish an inland lake or stream," nor "[s]tructurally interfere with the natural flow of an inland lake or stream." MCL 324.30102(d) and (e). Under MCL 324.30101(i),

Inland lake or stream" means either of the following:

(*i*) An artificial or natural lake, pond, or impoundment that is a water of the United States as that term is used in section 502(7) of the federal water pollution control act, 33 USC 1362.

(*ii*) A natural or artificial lake, pond, or impoundment; a river, stream, or creek which may or may not be serving as a drain as defined by the drain code of 1956, 1956 PA 40, MCL 280.1 to 280.630; or any other body of water that has definite banks, a bed, and visible evidence of a continued flow or continued occurrence of water, including the St. Marys, St. Clair, and Detroit Rivers.

There is no dispute that Rhodes never secured permits for his work. And there is no dispute that Rhodes either dredged or removed soil from the subject property when constructing the pond. The only question is whether the pond area was regulated wetlands. Similarly, while the record is somewhat unclear on the precise nature of Rhodes's work regarding what he described as an impression or ditch, the only question is whether this feature was a regulated stream. If so, there is no dispute that Rhodes's work either diminished or interfered with the natural flow of this stream.

The DEQ satisfied its initial burden under MCR 2.116(C)(10) by submitting affirmative evidence to support its motion. Specifically, the DEQ presented Smith's affidavit, along with his supporting data and analysis, to show that the subject property, including the pond area, comprised regulated wetlands and that the impression or ditch that Rhodes altered was a regulated stream. Smith averred that "[t]he soil pits dug at [the subject] property depict a water table within twelve inches of the surface (hydrology) and the accumulation of black muck at the soil surface (hydric soil)." Smith further averred—citing and attaching his wetland data, aerial images of the subject property, GPS data, soil maps, and topography maps—that the wetlands impacted by the pond were regulated because they were part of a wetland complex larger than 5 acres and within 500 feet of a stream. Relying on photographs of the subject property, Smith averred that Rhodes had "filled and excavated a stream" because "there is a defined bed and banks, which are features that form from the erosive forces of flowing water." Smith averred that the water in the photograph "is stagnant because Mr. Rhodes' [sic] construction activities disrupted the flow of water."

Rhodes did not substantively respond to this evidence or argue that the subject property did not include regulated wetlands or a regulated stream. Instead, without providing any affidavits or documentary evidence of his own, Rhodes argued that summary disposition was unwarranted

because the DEQ's claims were barred either under the doctrine of estoppel or the applicable statute of limitations, neither of which he mentions on appeal. For this reason, the trial court properly granted the DEQ's motion for summary disposition. See *Lowrey*, 500 Mich at 7 ("[T]he nonmoving party . . . must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted.").

Further, while the testing locations supporting Smith's wetlands determination were admittedly taken from areas adjacent to the pond site, Rhodes never raised this point before the trial court ruled on the DEQ's motion. Nevertheless, Rhodes's argument on this matter is wholly conclusory, and he fails to explain how this testing in any way violated the applicable statutory scheme or the required procedures to determine the presence of wetlands.

Finally, we decline to consider Kreski's affidavit and underlying analysis of the subject property that was submitted *after* the court ruled on the DEQ's motion for summary disposition. See *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009) ("Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided."). And Rhodes provided no authority or argument below, nor does he on appeal, to justify belated consideration of his additional evidence, or to justify relief based on the same. See, e.g., MCR 2.612(C)(1)(b) (court may grant relief from judgment based on "[n]ewly discovered evidence *which by due diligence could not have been discovered* in time to move for a new trial under MCR 2.611(B).") (emphasis added). Given the record before the trial court at the time the motion was decided, the court did not err by granting the DEQ's motion for summary disposition.

## IV. THE FINE

Rhodes also argues that this Court should reverse the trial court's imposed fine because it was unreasonable under the circumstances. We disagree.

This Court reviews for an abuse of discretion a trial court's imposition of fines under Parts 301 and 303 of the NREPA. See *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 44; 896 NW2d 39 (2016); MCL 324.30316(1); MCL 324.30112(2).

Part 303 of the NREPA provides that "the court may impose a civil fine of not more than $10,000.00 per day of violation." MCL 324.30316(1). Similarly, Part 301 of the NREPA provides that the court "may assess a civil fine of not more than $5,000.00 per day for each day of violation." MCL 324.30112(2).

As discussed, Rhodes violated the NREPA by illegally impacting regulated wetlands and a regulated stream at the subject property. Rhodes also committed numerous NREPA violations at the other properties at issue below that he does not contest on appeal. Helana Nelson, an environmental quality specialist for the DEQ, calculated the fines applicable for all these violations, stating that he was subject to a maximum fine of $13,060,000 under Part 301, and $52,200,000 under Part 303. And Nelson averred that a "substantial deterrent," presumably the requested fine of $150,000, was warranted given the numerous violations and Rhodes's willful ignorance regarding the permitting requirements at issue.

Based on the record evidence and the fines permitted by the statutes, we cannot conclude that the trial court's decision fell outside of the range of principled outcomes. The fine was well below what the court could have ordered under the applicable statutes. The statutes allow fines of up to $5,000 per day under Part 301, and $10,000 per day under Part 303. Even considering just one violation under Part 303, the trial court would have been statutorily authorized to impose its fine after a mere 15 days of continued violation. But Rhodes committed numerous NREPA violations at various properties, with said violations continuing for multiple years. And he acknowledged making mistakes regarding his work and interactions with the DEQ. Regarding the subject property in particular, and even accepting Rhodes's contention that he initially received verbal approval for his work, the DEQ informed Rhodes as early as May 2016, in writing, that his conduct was unlawful and needed to stop. Nonetheless, Rhodes continued work on the pond after receiving this notice, after commencement of this case, and until ordered to stop by the trial court in February 2021. And despite Rhodes's contention that he cannot afford the imposed fine, the DEQ submitted evidence that Rhodes owned various properties of significant value, some of which he purchased recently. Given these circumstances, the imposed fine was within the range of reasonable and principled outcomes.

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney